799 P.2d 1380

**STATE of Arizona,**
**Appellee–Respondent,**

v.

**William Matthew CRANE,**
**Appellant–Petitioner.**

**Nos. 1 CA–CR 12238, 1 CA–CR 12272**
**and 1 CA–CR 88–875–PR.**

Court of Appeals of Arizona,
Division 1, Department E.

May 31, 1990.

Review Denied Nov. 27, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., and Janet Keating, Asst. Atty. Gen., Phoenix, for appellee-respondent.

Kenneth D. Everett, Mohave County Public Defender by Michael J. Burke, Deputy Public Defender, Kingman, for appellant-petitioner.

## OPINION

EUBANK, Presiding Judge.

Appellant William Matthew Crane (defendant) was charged by indictment with two counts of molestation of a child (counts I and III) and two counts of sexual conduct with a minor (counts II and IV). Defendant had previously been convicted of sexual conduct with a minor, a class 6 felony, and was on probation in CR–8377 at the time of two of the charged offenses in CR–9267. Following a jury trial, defendant was found guilty of all four counts in CR–9267. These convictions were used to revoke defendant's probation in CR–8377. Defendant received sentences of fifteen years on counts I and II, twenty years on count III, and eighteen years on count IV. The sentences on counts III and IV were to run consecutively to those in counts I and II. The sentences on counts I and II were to run concurrently with each other and those in III and IV were to run concurrently with each other. Defendant also received 1.875 years in CR–8377, consecutive to all the other sentences.

Defendant appealed in both cases. CR–8377 became our 1 CA–CR 12272 and CR–9267 became our 1 CA–CR 12238.

Defendant then filed a Rule 32, Arizona Rules of Criminal Procedure petition. He was represented by the same counsel as on appeal. After an evidentiary hearing, the trial court denied relief. Defendant's motion for rehearing was denied. He filed a timely petition for review, which became our 1 CA–CR 88–875–PR. We have consolidated 1 CA–CR 12238, 12272 and 88–875–PR. Defendant's briefs address all three matters.

The facts may be summarized as follows, viewed in the light most favorable to sustaining the convictions. *E.g., State v. Olivas*, 119 Ariz. 22, 579 P.2d 60 (App.1978).

Defendant met the victim's mother in January of 1985, in Bullhead City, Arizona. They were married on May 5, 1985. Sometime in April of 1985, the victim, then seven years old, was staying with her aunt, cousin, and sister in Bullhead City. The victim was sleeping in a bed with her female cousin. The defendant got on the bed, rearranged the victim's clothing, positioned himself on top of her, and went "up and down." She testified that defendant's "ding-dong" was between her legs. No one was informed of this act at the time.

On June 8, 1987, the victim, then nine years old, was cutting defendant's hair in the bedroom, with the door open. Defendant's friends Randy Ide and Dawn Fraser were in the living room of the trailer. The defendant took the victim to the bathroom and had her lie on the floor. He removed his shorts, pulled up the victim's skirt, and pulled down her underwear. He again went "up and down" while on top of her. He touched his penis to her private parts. He asked her to close her legs. She felt his "ding-dong" between her legs. Defendant then ejaculated onto her stomach. The victim told her aunt what had happened and the defendant was arrested on June 26, 1988.

While incarcerated, defendant wrote several letters to his wife. The letters included statements such as "Talk to our daughter and just tell her what to say," and "Nobody has to know." The mother testified that the answers that defendant proposed to be given to the investigators were contrary to what the investigators had been previously told. One letter suggested six reasons why the victim lied and six reasons why she had an unusual knowledge of sexual matters.

In CR–8377 defendant had previously been convicted of having sexual intercourse with a fifteen-year-old girl, designated AB. This incident occurred on June 29, 1986, between the two incidents charged in CR–9267.

At trial, the state, over defendant's objections, called his wife and introduced the letters. The state also introduced prior consistent statements by the victim to Anne Kinnaird, a social worker. It also introduced various expert opinions by Kinnaird. The only other witnesses for the state were the victim, her mother, AB, and the police officer who took the report, Tiana Gledhill.

The defendant testified in his own behalf. The defense also called Ide and Fraser to testify regarding the June 8, 1987 incident. Defendant denied that the charged acts had occurred. He testified that he was not in Bullhead City from March 29 through May 5, 1985. He admitted that he was with the victim on June 8, but denied that he took her in the bathroom or that he molested her. The state presented no rebuttal evidence.

■ Defendant's first argument is that the trial court erred in admitting the testimony of AB. He contends that the offense with AB was not sufficiently similar to the charged acts; therefore, expert testimony was required to show that the prior act indicated an emotional propensity toward sexual aberration. *See State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977). There is no contention that the act was not sufficiently close in time. Indeed, the incident occurred on June 29, 1986, between the two incidents charged in CR–9267 herein.

Taking the evidence in the light most favorable to sustaining the convictions, in both the prior and the charged incidents the defendant had sexual contact with an underage female. Both acts were genital-vaginal in nature although, as we discuss hereafter, there was no evidence of penetration of the victim in this case. Most importantly, however, the acts are similar in the peculiarity that in both cases the defendant ejaculated upon the body of the female. We find no significant difference in the acts. In *Treadaway*, by comparison, where the court said the acts were not sufficiently similar, the prior act was of fellatio and anilingus with one boy, while the charged act involved sodomy upon a boy. In addition, and most importantly, the three-year period of time between the acts was considered unreliable without ex-

pert testimony. Here the acts were contemporary.

We find that the different ages of the victims raises no significant distinction. For example, in *State v. Spence*, 146 Ariz. 142, 704 P.2d 272 (App.1985), the defendant began molesting the victim when she was four and continued until she was twelve. In *Treadaway, supra,* the court did not focus on the different ages of the victims (thirteen and six), but rather stated:

> Similarity is also a problem because *the acts themselves* are different and may well involve different psychological and emotional propensities. (Emphasis added).

116 Ariz. at 167, 568 P.2d at 1065.

■ Defendant also complains about the admission of a letter detailing specific aspects of his sexual history with his wife. We agree with defendant that the letter contains no obvious relevance. However, we find absolutely no prejudice. Under the Arizona statutes, consensual sexual conduct with one's wife is not a crime, nor is such conduct a bad act under Rule 404, Arizona Rules of Evidence.

Defendant further complains that the letter indicates that defendant had been in jail before. However, similar information was brought out by defendant's admission of two prior convictions when he testified. Therefore, we find no error.

■ Defendant next argues that social worker Anne Kinnaird improperly gave an opinion regarding the truthfulness of the victim. We agree that the testimony cited by defendant violates the dictates of *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986), and *State v. Tucker*, 165 Ariz. 340, 798 P.2d 1349 (App.1990). We find the error to be harmless. *Id.*

First, evidence of defendant's propensity to molest young girls was admitted, as we have previously discussed. The victim's testimony was buttressed by her prior consistent statements, which were properly admitted as we shall hereafter discuss. Moreover, the victim's knowledge of the properties of semen is an unusual one for a child aged seven and nine, which defendant

has in no way satisfactorily explained. Further, defendant's attempts to change the testimony of the victim and his wife exhibit a strong consciousness of guilt. *See State v. Van Alcorn*, 136 Ariz. 215, 665 P.2d 97 (App.1983). Lastly, the victim's testimony of the one incident where defendant told her to close her legs, taken in connection with the wife's testimony that defendant told her to do the same thing when they had sex, considering that the victim has never seen them do this, or been told that they did this, gives strong credibility to the victim's story.

In conclusion, we can say, beyond a reasonable doubt, that the jury would have convicted defendant absent the improper testimony by Kinnaird. *See State v. Hein*, 138 Ariz. 360, 674 P.2d 1358 (1983).

■ Defendant next argues that the trial court erred in denying his motion for a directed verdict on Counts II and IV, alleging sexual conduct with a minor, because there was no evidence of sexual intercourse. We disagree.

Sexual conduct with a minor is defined in A.R.S. § 13–1405(A):

> A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse ... with any person who is under eighteen years of age.

Arizona Revised Statutes § 13–1401(3) defines sexual intercourse:

> "Sexual intercourse" means penetration into the penis, vulva, or anus by any part of the body or by any object *or manual masturbatory contact with the penis or vulva.* (emphasis added).

The following evidence was presented at trial. On direct, the victim testified that on both occasions, the defendant was on top of her "going up and down." The second time he told her to close her legs. She further testified that defendant's "ding-dong" touched the part of her body from where she went to the bathroom. Defendant ejaculated on the victim on the second occasion. On cross-examination, defense counsel asked:

Q. Now, if I use the phrase go in you, would you know what I was talking about?

A. Yes.

Q. Did Matt [defendant] do that?

A. No.

No further testimony on the point was elicited on redirect.

In responding to defendant's motion for a directed verdict on counts II and IV, the prosecutor argued to the court that:

MR. LARSEN: Your Honor, obviously Mr. Boose is reading the word intercourse in a more literal fashion. The statute does not contemplate intercourse to include merely vaginal intercourse. It contemplates all forms of intercourse whether it be full penetration or whether it be the act described by [the victim] as a person getting on top of her and going up and down simulating such intercourse of a vaginal nature which constitutes intercourse under the statute and therefore Mr. Boose's motion should be denied.

The court denied the motion, stating:

THE COURT: Mr. Boose, you asked [the victim] a question and that was whether she knew what you meant when you said go in to [sic] her and then you asked did Matt go in to [sic] you and she said no. The problem that I have is that you never asked her to explain what does she mean by going in to [sic] her and I know that at the time I wasn't sure whether you meant by that going in to [sic] her meant ejaculating in to [sic] her or whether that meant penetration and I honestly don't know what that testimony was.

I believe that there has been testimony presented which could lead the jury to believe that sexual intercourse did occur as defined in the statute so I'm going to deny your motion for a directed verdict of acquittal on the two Sexual Conduct with a Minor charges.

At issue in this case is the phrase in A.R.S. § 13–1401(3) which states that sexual intercourse may be defined as "manual masturbatory contact with the penis or vulva." We must decide whether the simulat-ed sexual intercourse between the victim and the defendant constituted "sexual intercourse" within the meaning of the statute.

In *State ex rel. Hamilton v. Superior Court,* 128 Ariz. 184, 624 P.2d 862 (1981), our supreme court stated that sexual intercourse, as defined in A.R.S. § 13–1401(3), required at least two persons. While this statement may have been dictum in *Hamilton,* it was found to be a correct statement of the law in *State v. Flores,* 160 Ariz. 235, 772 P.2d 589 (App.1989). At issue in *Flores* was whether there could be sexual intercourse under A.R.S. § 13–1401(3) by one person acting alone. In *Flores,* the victim discovered Flores in the kitchen area of her apartment "stroking his penis." He ran out of the apartment when the victim tried to get a can of mace from her purse. The court found that "sexual intercourse, as defined in A.R.S. § 13–1401(3), includes a requirement that manual masturbatory conduct occur to another." *Id.* at 240, 772 P.2d at 594. One person acting alone through manual masturbatory contact with the penis was outside the statutory definition of sexual intercourse. *Id.*

In this case we find that there was sexual intercourse within the meaning of A.R.S. § 13–1401(3). The record shows that the victim was under eighteen years of age. According to the victim's testimony, in April of 1985 the defendant got on top of her, placed his penis between her legs, went up and down, and she felt his "ding-dong" between her legs. On June 8, 1987, the defendant told the victim to lie down on the bathroom floor. He then pulled down the victim's underwear and told her to close her legs. He placed his penis between her legs, went back and forth, his penis touched her private parts and he ejaculated on the victim. We hold that this type of simulation of sexual intercourse is sexual intercourse within the meaning of the statute. In addition, we believe that the "manual" requirement in masturbatory contact in the statute was met in this case. On the second occasion, the appellant used his hands to pull up the victim's skirt and pull down her underwear, and on both occa-

sions, the appellant manually placed his penis between the victim's legs. The victim testified:

Q. [Counsel] Okay. When he put his ding-dong upon you did you have it touch your body?
A. [Victim] Yes.
Q. Let's go through the rest of that statement.

\* \* \* \* \* \*

Question: Do you know where he put it?
Answer: He put it between my legs.
Question: Okay. Do you know what he did with it?
Answer: He just started going up and down.
Is that what is written here on the transcript from here down?
A. Yes.

The record is clear that appellant manually placed his penis between the victim's legs. In addition, when the appellant was rubbing his penis back and forth between the victim's legs, there was "manual masturbatory contact with the penis" between two individuals, required by A.R.S. § 13–1401(3) and *Flores*, 160 Ariz. at 240, 772 P.2d at 594.

We conclude that A.R.S. § 13–1401(3) does not mandate penetration in every case. Manual masturbatory contact with another is sufficient. *Flores.* We see no difference between a case where a defendant has a child manually masturbate him and where defendant positions the child's body, and his own, in such a way that contact with her body accomplishes the same purpose. From our interpretation of the legislative intent the activity prohibited by the statute is masturbative contact with the body of another.

Therefore, we affirm the conviction in Counts II and IV.

■ Defendant's next argument is that prior statements to Detective Tiana Gledhill and Anne Kinnaird should have been precluded pursuant to *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987). First, we note that here the victim testified and was cross-examined. In *Robinson*, the victim did not testify. Also, we agree with

the state that there was no testimony by Gledhill as to prior statements. Therefore we need only examine the statements to Kinnaird.

Defense counsel did object to Kinnaird's testimony, but was overruled. The trial court specifically ruled that the state had made the necessary foundation for the evidence "under the *Robinson* case." The only question then is whether the court misapplied *Robinson*.

In *Robinson*, the court held that a child's prior statements regarding molestation could be admitted under Rule 803(24), Arizona Rules of Evidence, after considering the following five factors: spontaneity; consistency; unusual knowledge of sexual acts; corroboration by other evidence; and motive to lie by the person reporting the hearsay statements. 153 Ariz. at 201–202, 735 P.2d at 811–12. *See also State v. Allen*, 157 Ariz. 165, 755 P.2d 1153 (1988).

Applying the *Robinson* factors to this case, we find no error. The statements to Kinnaird were not spontaneous, but were the result of leading questions by a professional. However, the statements were consistent with trial testimony. There was no particular motive of Kinnaird to lie about whether the statements had occurred.

■ Most importantly, the victim's statement exhibited a peculiar knowledge of sexual matters. She described the semen as "white liquid" that was "sort of thick and a little duller than glue." She testified that it felt "sort of like a liquid soap." There is no explanation as to how the victim would have known of the appearance and consistency of semen absent the occurrence of the alleged acts. On balance, we cannot say that the court erred in applying the *Robinson* test. Defendant has filed a supplemental authority, *State v. Tucker*, 165 Ariz. 340, 798 P.2d 1349 (App.1990). In our opinion, Rule 801(d)(1)(B), Arizona Rules of Evidence, would admit the testimony because it rebuts defendant's implied charges of fabrication and improper motive. Thus, *Tucker* would not apply.

Defendant's last three arguments are somewhat related, so we consider them all

together. All stem from defendant's dissatisfaction with trial counsel. Defendant urges that the trial court erred in three respects: (1) failure to appoint substitute counsel; (2) failure to grant a continuance on the day of trial because counsel was unprepared to try the case; and (3) denying Rule 32 relief based on ineffective assistance of counsel. We begin with the third issue because the first two issues cannot be reversible error unless defendant received ineffective assistance of counsel.

In order to show ineffective assistance of counsel defendant must demonstrate (1) that his actions fell below the standard of minimal competence; and (2) that there was a reasonable probability of a different result had counsel been competent. *E.g., State v. Gerlaugh*, 144 Ariz. 449, 698 P.2d 694 (1984). We will not reverse a conviction on ineffective assistance of counsel grounds on appeal absent a separate evidentiary hearing concerning counsel's actions or inactions. *State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989). As noted earlier, an evidentiary hearing was held in connection with the Rule 32 proceedings.

In reviewing Rule 32 proceedings, we shall consider only those matters raised with specificity in the motion for rehearing. *E.g., State v. Thompson*, 139 Ariz. 552, 679 P.2d 575 (App.1984). The only issue so raised by defendant regarding ineffective assistance [1] was that:

> The trial court erred in not finding that prejudice resulted from petitioner's trial counsel's failure to interview or call to testify alibi witnesses who could show that petitioner was not in Bullhead City on or about May 1, 1985; the day of one of the alleged offenses.

In deciding the issue, the trial court first noted that it felt, "this was an extremely strong case against the [d]efendant" and went on to explain why. The court then analyzed the alibi defense issue as follows, having previously stated that "the alibi is-

sue is probably the most significant issue that has been raised within this hearing."

Mr. Boose indicated that in his conversations with the Defendant that an alibi defense was not clearly indicated; that Mr. Crane had told him that he worked for Ode Electric and then he generally was in Phoenix at the time in question but that he wasn't able to really pin down on specific dates where he was.

He also indicated that despite his apparent feeling that alibi was not a defense to pursue, that he did question people concerning that defense and Mr. Boose's testimony was that the stepfather Mr. Allshouse was able to say generally that Mr. Crane was in Phoenix at general times but that he was not able to pin down specific times and my notes also indicate very clearly Mr. Boose said Mr. Allshouse told him that Mr. Crane was away from the house often during April and May of 1985 and that he wasn't able to say where Mr. Crane was on either May 1st or the week beforehand and I believe that the evidence which has been presented to me has shown that Mr. Boose first of all was not clearly advised by his client that alibi was a significant defense in this case but that he still went ahead and investigated that defense to some extent and satisfied himself that it was not viable defense to pursue.

We agree with the court's analysis of this issue. Generally it is a matter of counsel's discretion as to what witnesses to call on defendant's behalf. *E.g., State v. Gerlaugh, supra; State v. Meeker*, 143 Ariz. 256, 693 P.2d 911 (1984). Counsel interviewed what probably would have been the strongest alibi witnesses, Mr. and Mrs. Allshouse, and found that they would not be credible witnesses. The Ode Electric employment records would not establish a solid alibi because they did not cover defendant's time outside of work.

Further, the state's testimony that was given at trial was not designed to rebut an

---

**1.** Defendant also raised an issue regarding ineffective examination of defense witness Randy Ide, but defendant has not raised the issue in his appellate brief and has accordingly waived that

issue. *E.g., State v. McCall,* 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984).

alibi defense because none was presented. It is somewhat difficult to speculate about what evidence the state may have adduced as to defendant's whereabouts if he had claimed an alibi on May 1.

Moreover, even defendant's testimony tended to negate any alibi defense. For instance, although defendant initially denied being in Bullhead City between March 29, 1985 and May 5, 1987, he admitted that at different periods prior to and just after the marriage he had occasion to be in Bullhead City. Also, there was nothing magical about May 1 because the victim testified she thought the first incident occurred in April of 1985.

Finally, of course, the proposed alibi defense would not aid defendant on the 1987 charges. Defendant's own witnesses established that he was with the victim when the alleged acts occurred. For the above reasons, we find no error in the trial court's denial of relief based on alleged ineffective assistance for counsel's failure to assert an alibi defense.

Although we need not address the other allegations of ineffective assistance of counsel at trial, we generally agree with the observations that the trial court made in denying the Rules 32 claims. We agree with the trial court that the state had a strong case on the child molestation counts.

■ Having found no ineffective assistance of counsel at trial, there was no prejudice from the court's failure to appoint substitute counsel. Defendant is entitled only to competent counsel, not counsel of his choice. *E.g., State v. LaGrand*, 152 Ariz. 483, 733 P.2d 1066 (1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 Furthermore, as pointed out by the state, when defendant requested substitute counsel on September 16, 1987, he said:

> I'm ready for another counsel. I like Mr. Boose a lot, he's a good attorney.

Defense counsel asserted that defendant lacked confidence in him and he lacked confidence in his ability to deal with defendant. Defendant did not renew his request for new counsel until after trial had started.

Defendant is not entitled to appointment of counsel of his choosing. *State v. Fayle*, 134 Ariz. 565, 658 P.2d 218 (App.1982). He is not entitled to a "meaningful relationship" with counsel. *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *State v. Poehnelt*, 150 Ariz. 136, 722 P.2d 304 (App.1985). Certainly defendant was concerned with counsel's representation of him at the time of September 16, and there was, at that time, some reason for this concern. But there was nothing so compelling as to find that the trial court committed reversible error in not appointing substitute counsel.

■ Similarly, we find no error in the court's failure to continue the trial. The court had already granted two continuances. This was not to be a long trial; it lasted only two days, October 5th and 6th of 1987. The state presented only five witnesses and the defense three.

Although defense counsel's failure to interview the victim prior to trial at first glance may appear unjustifiable, we note in reviewing the record that counsel had access to two transcripts of in-depth interviews done with the victim before trial. At the Rule 32 hearing, the Mohave County Public Defender testified that he had known lawyers, respected in their profession, who did not interview the victim personally until the day of trial for tactical reasons. Defense counsel had enough knowledge of the case to realize there was no evidence of penetration and when he asked the witness if defendant went "in her," he obtained the desired answer.

A motion for continuance is submitted to the discretion of the trial court and will not be overturned absent a clear abuse of discretion. *E.g., State v. Amarillas*, 141 Ariz. 620, 688 P.2d 628 (1984). There was no such clear abuse here.

Pursuant to A.R.S. § 13–4035, we have searched the record for fundamental error and have found none. For the above reasons, the convictions and sentences are affirmed.

SHELLEY, J., concurs.

VOSS, Judge, dissenting.

The state used Ms. Kinnaird as its expert to enable it to restate the victim's allegations and to assure the jury that the victim was telling the truth. The use of an expert in this way is clearly condemned in *State v. Lindsey*, 149 Ariz. 472, 720 P.2d 73 (1986). The state also introduced testimony regarding defendant's prior bad acts in an effort to show defendant's emotional propensity to commit child molestation. The state in introducing this evidence did not comply with *State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977), therefore the evidence of prior bad acts was inadmissible to show emotional propensity. As I conclude from a review of the remaining evidence that the errors are not harmless, I dissent.

There can be no dispute that the state presented Ms. Kinnaird as an expert in sexual abuse cases. The state laid the necessary foundation referring to Ms. Kinnaird's degree in clinical social work and her receipt of an A.C.S.W. Further, the state referred to Ms. Kinnaird as "the expert here."

It is proper to use experts such as Ms. Kinnaird in sexual abuse cases in limited circumstances. The supreme court in *Lindsey* described such use:

> The trial judge has discretion to allow such expert testimony where it may assist the jury in deciding a contested issue, including issues pertaining to accuracy or credibility of a witness' recollection or testimony. (Citation omitted.) The trial judge may exercise this discretion where there is a reasonable basis to believe that the jury will benefit from the assistance of expert testimony that explains recognized principles of social or behavioral science which the jury may apply to determine issues in the case.

149 Ariz. at 473, 720 P.2d. at 74. The court acknowledged that it cannot be assumed that the average juror is familiar with the behavioral characteristics of victims of child molesting and that knowledge of such characteristics may well aid the jury in weighing the testimony of the victim. *Id.* 149 Ariz. at 473–74, 720 P.2d at 74–5. The court went on to state that the purpose of allowing behavioral evidence is to give the jury information which it may use in weighing the evidence; it is not to tell the jury who is correct. *Id.*

What occurred and was condemned in *Lindsey* is what occurred here. In *Lindsey*, the expert stated that "most people in the field feel that it's a very small proportion [of incest victims] that lie." *Id.* Here, Ms. Kinnaird stated: "Well, basically professionally it's been found that most frequently children who do report sexual abuse *are being abused.*" She further testified: "However it's an expert's job to find out which ones are doing that [falsely accusing] and which ones aren't and that's my job ... and I think probably because it's more open and talked about there are children that possibly could cry wolf but generally speaking, you know, *it's true.*"

Here, the defendant took the stand and denied the victim's allegations of sexual abuse. As the victim testified to the contrary, credibility was *the* issue. Although Ms. Kinnaird did not expressly state that the victim was telling the truth, she lumped the victim into a class of molested children who generally are telling the truth. Ms. Kinnaird's testimony is exactly of the type condemned in *Lindsey*—she gave her opinion about the truthfulness of the victim's testimony. In condemning any testimony which "quantifies the probabilities of the credibility of another witness", the supreme court in *Lindsey* advised: "Nor should such experts be allowed to give opinions with respect to the accuracy, reliability or truthfulness of witnesses of the type under consideration."

The majority concedes that the cited testimony "violates the dictates" of *Lindsey*, but finds the error harmless. I feel I must emphasize the clarity and forcefulness of the *Lindsey* holding. It is necessary, because to take such a clear violation and ignore it as harmless error in anything other than the most compelling factual case leads to the demise of the protection afforded. The testimony here is less than compelling. Here, as in *Lindsey*, "guilt or innocence ... inherently turned on the question of the [victim's] credibility...."

*Id.* 149 Ariz. at 477, 720 P.2d at 77. After so concluding, the supreme court in *Lindsey* stated that permitting testimony on truthfulness in this context was so prejudicial that it "*cannot* be said beyond a reasonable doubt that the jury would have convicted even in absence of the error." *Id.* (Emphasis added.) After reviewing the evidence remaining in this case, I cannot conclude beyond a reasonable doubt that the jury here would have convicted without Ms. Kinnaird's advice to the jurors on how to decide the case. *See State v. Moran,* 151 Ariz. 378, 383, 728 P.2d 248, 253 (1986) (improper to admit expert testimony that children rarely lie about sexual abuse).

Contributing to my conclusion that this case should be reversed is the admission of the testimony of AB. In *Treadaway,* 116 Ariz. 163, 568 P.2d. 1061, the supreme court confirmed the emotional propensity exception. To qualify, the court required a foundational showing that the other bad acts involved sexual aberration, similarity, and nearness in time. *Id.* 116 Ariz. at 166, 568 P.2d at 1064. Admission of other bad acts testimony which does not satisfy these requirements is error unless expert testimony shows that the prior bad act shows a continuing emotional propensity. Here, similarity is clearly a problem. The acts themselves are different as well as any conclusions that may be drawn about predisposition or sexual aberration. The victim in the present case was seven years old when the physical contacts started, she lived with the defendant and there was no sexual intercourse. In contrast, AB testified that at age 15, she and her cousin met the defendant at 3:30 or 4:00 A.M. in the parking lot of the Nevada Club located in the Bullhead City—Laughlin area. After sharing "a line" and an alcoholic drink with the defendant, the defendant offered to take AB and a friend home. AB testified that the defendant did not take her and her cousin directly home. He took them down a dirt road, parked, pulled a gun, pointed it at them and told them to take their clothes off or he would "blow their heads off." AB stated that she and her cousin disrobed. The defendant looked them over, chose AB and raped her. As the prior bad act involving AB does not satisfy *Treadaway,* expert testimony was necessary. Since none was provided, the admission of the testimony was error.

Furthermore, the premise of the emotional propensity exception is balancing relevancy and prejudice. The ideal is strong relevancy rendering prejudice merely consequential. Here, the rape at gun-point had, at best, minimum relevancy while the prejudice was overwhelming.

The *Treadaway* and *Lindsey* errors combine here to require a new trial.