NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

STEPHEN GRANT MERRILL, *Appellant.*

No. 1 CA-CR 13-0583
1 CA-CR 13-0585
(Consolidated)

FILED 3-19-2015

---

Appeal from the Superior Court in Maricopa County
No.   CR 2012-116325-001
CR 2012-116840-001
The Honorable M. Scott McCoy, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Janelle A. McEachern, Attorney at Law, Chandler
By Janelle A. McEachern
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Samuel A. Thumma joined.

---

D O W N I E, Judge:

¶1           Stephen Grant Merrill appeals his convictions and sentences for criminal trespass, interference with judicial proceedings, burglary, sexual assault, kidnapping, assault, and impersonating a police officer. Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), defense counsel has searched the record, found no arguable question of law, and asked that we review the record for reversible error. *See State v. Richardson*, 175 Ariz. 336, 339, 857 P.2d 388, 391 (App. 1993).  Merrill has not filed a supplemental brief.  For the following reasons, we vacate the conviction and sentence for impersonating a police officer, affirm the remaining convictions and sentences, and remand for resentencing.

## FACTS AND PROCEDURAL HISTORY

¶2           Merrill and M.M. were married and lived together at a house owned by M.M.'s mother, F.K. ("the 56th Dr. house").  On August 22, 2011, M.M. had Merrill served with an order of protection issued by the Maryvale Justice Court.  The order prohibited contact between the parties and ordered Merrill to stay away from the 56th Dr. house.  The parties amended the order in September 2011 to permit contact through email, fax, and text messaging, as well as personal contact away from the 56th Dr. house.

¶3           Merrill and M.M. attempted to reconcile and continued having contact until March 2012, when M.M. advised Merrill she would enforce the order of protection.  Thereafter, on March 15, 2012, Merrill appeared at the 56th Dr. house and began yelling and knocking on the door.  F.K. called the police after Merrill refused to leave.  By the time officers responded, Merrill was gone.

¶4           On March 17, 2012, Merrill once again appeared at the 56th Dr. house.  A.W., a houseguest, called the police.  Merrill was arrested and admitted being at the residence.  On March 19, 2012, Merrill again went to

the 56th Dr. house and entered a trailer on the property. F.K. called the police, and Merrill was arrested.

¶5 In the early morning hours of March 28, 2012, M.M. and A.W. were asleep in the living room of the 56th Dr. house. M.M. was awakened by a knock at the door. She looked through a window and saw two men. One man said he was "an officer" and instructed M.M. to open the door. M.M. did not see a police car and requested identification. The men continued to knock, so M.M. called 911. M.M. told the dispatcher she suspected one of the men was Merrill.

¶6 Before the police arrived, Merrill entered the home through a back window and grabbed M.M. from behind. M.M. was able to elude his grasp briefly, but Merrill grabbed her by the legs and dragged her to the bedroom. Merrill jumped on top of M.M., began kissing her, and attempted to take off her clothes. Though Merrill lifted up M.M.'s shirt, she was able to keep most of her clothing on. Merrill was still clothed. With M.M. pinned underneath him, Merrill began thrusting his penis against her genitals.

¶7 Merrill released M.M after A.W., who had been on the phone with the police, picked up a baseball bat. M.M. went out into the front yard. Merrill and A.W. followed. M.M. went back into the house and tried to close the door, but Merrill stuck his foot in the door. A.W. approached Merrill from behind, but Merrill pushed him to the ground several times before forcing his way through the front door. M.M. picked up a hammer. Merrill tried to take it from her, and the two struggled until the police arrived, at which point Merrill ran into the bedroom. Officers ordered Merrill to come out of the bedroom, and he surrendered. A.W.'s arm was bleeding.

¶8 At the police station, officers read Merrill his *Miranda* rights and interviewed him. Merrill indicated he was aware of the order of protection and admitted entering the house through the back window. He stated he and M.M. went to the bedroom so they could talk. He stated that at some point, M.M. seemed uncomfortable, but he did not want to pressure her, so she got up and left. He admitted he was hoping to have sex with M.M. and also admitted struggling with A.W. and pushing him to the ground.

¶9 Merrill was charged with: (1) count one, criminal trespass, a class six felony and domestic violence offense, (2) count two, interfering with judicial proceedings, a class one misdemeanor and a domestic violence

offense (March 17), (3) count three, interfering with judicial proceedings, a class one misdemeanor and domestic violence offense (March 15), (4) count four, interfering with judicial proceedings, a class one misdemeanor and domestic violence offense (March 19), (5) count five, interfering with judicial proceedings, a class one misdemeanor and domestic violence offense (March 24), (6) count six, burglary in the second degree, a class three felony, (7) count seven, sexual assault, a class two felony, (8) count eight, kidnapping, a class two felony, (9) count nine, aggravated assault, a class three dangerous felony, (10) count ten, interfering with judicial proceedings, a class one misdemeanor, (11) count eleven, assault, a class one misdemeanor, and (12), count twelve, impersonating a peace officer, a class four felony.[1]

**¶10**        Count five was dismissed after it was discovered that Merrill had pled guilty to the charge in a separate proceeding.  Merrill was acquitted of count nine but convicted of all other counts.  The jury made findings of domestic violence for counts one, two, three, and four.  Merrill was sentenced to six years' flat time for count seven, to run concurrently with sentences of three years for count six, six months for count ten, six months for count eleven, and two years for count twelve.[2]  He was also sentenced to four years for count eight, to run consecutively to his sentence for count seven.  For counts one and two, Merrill was sentenced to three years of supervised probation, to commence upon his release from his sentence for count eight.  As a condition of probation, Merrill received six months in county jail for each of counts three and four, to run concurrently with his sentences for counts six, seven, ten, eleven, and twelve.  He was given 503 days of presentence incarceration credit.

**¶11**        Merrill timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, as well as Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

---

[1]        Merrill was charged in two separate cause numbers that were consolidated for trial.  Cause number CR 2012-116325-001 contained five counts that were renumbered counts 1-5 for trial.  Cause number CR 2012-116840-001 contained seven counts that were renumbered counts 6-12 for trial.

[2]        The sentencing minute entries separate the sentences out into their original cause numbers and count numbers, but the oral pronouncement refers to them as they were renumbered for trial.  For the sake of simplicity, we refer to the counts as they were renumbered for trial.

## DISCUSSION

¶12    We have read and considered the brief submitted by appellate counsel and have reviewed the entire record. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. Merrill was either present at or waived his presence for all critical phases of the proceedings. He was represented by counsel. The jury was properly impanelled, was comprised of 12 individuals, and the record reflects no irregularity in the deliberation process. The sentences imposed were within the statutory ranges. Merrill was awarded the proper amount of presentence incarceration credit.

¶13    Substantial evidence supports the verdicts as to counts one, two, three, four, six, seven, eight, ten, and eleven. As we discuss *infra*, however, substantial evidence does not support the conviction for count twelve. *See State v. Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981) (In reviewing for sufficiency of evidence, "[t]he test to be applied is whether there is substantial evidence to support a guilty verdict."). "Substantial evidence is proof that reasonable persons could accept as sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *State v. Spears*, 184 Ariz. 277, 290, 908 P.2d 1062, 1075 (1996). Substantial evidence "may be either circumstantial or direct." *State v. Henry*, 205 Ariz. 229, 232, ¶ 11, 68 P.3d 455, 458 (App. 2003).

¶14    For count one, the State was required to prove Merrill knowingly entered or remained unlawfully in or on a residential structure. A.R.S. § 13-1504(A)(1). A residential structure is defined as "any structure, movable or immovable, permanent or temporary, that is adapted for both human residence and lodging whether occupied or not." A.R.S. § 13-1501(11). The State introduced a recording of A.W.'s 911 call on March 17, in which he describes Merrill pushing his way into the 56th Dr. house. Merrill acknowledged being at the house and knowing he was not supposed to be there because of the order of protection. Substantial evidence supports the conviction for count one.

¶15    For counts two, three, four, and ten, the State was required to prove Merrill knowingly disobeyed a lawful order of a court. A.R.S. § 13-2810(A)(2). The State introduced copies of the original order of protection, the amended order of protection, and an acceptance of service signed by Merrill. The officer who served the original order of protection testified he served Merrill on August 22, 2011. Merrill admitted receiving the order of protection. Both parties acknowledged not following the order initially, but M.M. testified she informed Merrill she would start enforcing

5

it in March 2012. Substantial evidence supports the verdicts on counts two, three, four, and ten.

**¶16**      For count two, there is substantial evidence, discussed *supra*, that Merrill went to the 56th Dr. house on March 17, 2012, despite knowing he was violating the order of protection.

**¶17**      Regarding count three, F.K. and M.M. testified that Merrill appeared at the 56th Dr. house on March 15, 2012, knocking on the door and yelling at M.M. F.K. asked him to leave and called the police. Substantial evidence supports the verdict as to count three.

**¶18**      Regarding count four, F.K. testified she called the police to report that Merrill was at the 56th Dr. house. An officer testified he responded to the call on March 19, spoke to M.M., and detained Merrill after finding him in a trailer on the property. Another officer testified to verifying the validity of the order of protection. Substantial evidence supports the verdict as to count four.

**¶19**      Regarding count ten, Merrill was apprehended inside the 56th Dr. house on March 28, 2012. This, combined with evidence concerning the events of March 28 discussed *infra*, provides substantial evidence to support the conviction as to count ten.

**¶20**      For count six, the State was required to prove Merrill entered the 56th Dr. house "with the intent to commit any . . . felony therein." A.R.S. § 13-1507(A). M.M. testified Merrill entered the house through the back window in the early morning hours of March 28, 2012 after she refused to open the front door. Merrill told police officers he went to the home hoping to have sex with M.M., and jurors could have reasonably concluded that he intended to have sexual contact with M.M. with or without her consent.

**¶21**      Count seven required the State to show Merrill "intentionally or knowingly engag[ed] in sexual intercourse" with M.M. without her consent. A.R.S. § 13-1406(A). The definition of sexual intercourse includes "masturbatory contact with the penis." A.R.S. § 13-1401(3). Simulated sexual intercourse is within the statutory definition of masturbatory contact. *State v. Crane*, 166 Ariz. 3, 8-9, 799 P.2d 1380, 1385-86 (App. 1990). M.M. testified that she did not consent to any sort of sexual contact with Merrill and that she told Merrill she was *not* going to have sex with him. She also testified he dragged her to the bedroom, pinned her on the ground, and rubbed his penis against her pelvic area. Substantial evidence supports the verdict for count seven.

¶22        For count eight, the State was required to prove Merrill knowingly restrained M.M. with the intent to inflict a sexual offense on her. A.R.S. § 13-1304(A)(3).  M.M. testified Merrill grabbed her from behind after coming in the back window and dragged her into the bedroom.   As discussed *supra*, there is evidence Merrill intended to commit sexual assault against M.M.  Substantial evidence supports the verdict for count eight.

¶23        Count eleven required the State to prove Merrill intentionally, knowingly, or recklessly caused physical injury to A.W.  A.R.S. § 13-1203(A)(1).  M.M. testified Merrill pushed A.W. down several times, and Merrill admitted doing so.  Officer Maxwell saw A.W. bleeding from the arm, and the State introduced photographs of A.W.'s injuries into evidence.  Substantial evidence supports the verdict for count eleven.

¶24        For count twelve, the State was required to prove Merrill pretended to be a peace officer without lawful authority and engaged in conduct "with the intent to induce another to submit to [his] pretended authority or to rely on [his] pretended acts."  A.R.S. § 13-2411(A).  The State failed to prove this count beyond a reasonable doubt.  M.M. testified she heard a knock in the early morning hours of March 28 and saw two men standing outside.  One man was standing away from the door and was not visible.  The other man, whom she did not recognize, was closer to the door. M.M. testified: "I looked out the front window.  The individual standing on the other side, *a male that I did not know, said, "I am an officer, open up*." (Emphasis added.).  At no point did M.M. attribute statements about being a police officer to Merrill, and the State did not allege accomplice liability. Nor was an accomplice liability jury instruction given.  Because substantial evidence does not support the conviction for impersonating a police officer, we vacate that conviction on count twelve and remand for resentencing without that count.

## CONCLUSION

**¶25** We vacate Merrill's conviction and sentence for count twelve and remand for resentencing. We affirm the remaining convictions and sentences. Counsel's obligations pertaining to Merrill's representation in this appeal have ended. Counsel need do nothing more than inform Merrill of the status of his appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). On the court's own motion, Merrill shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
FILED: ama