IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

MANUEL FERNANDO FLOREZ,
*Appellant*.

No. 2 CA-CR 2015-0480
Filed October 25, 2016

---

Appeal from the Superior Court in Pima County
No. CR20142522001
The Honorable Carmine Cornelio, Judge

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Amy M. Thorson, Assistant Attorney General, Tucson
*Counsel for Appellee*

Steven R. Sonenberg, Pima County Public Defender
By David J. Euchner, Assistant Public Defender, Tucson
*Counsel for Appellant*

**OPINION**

Judge Miller authored the opinion of the Court, in which Presiding Judge Vásquez and Judge Kelly[1] concurred.

M I L L E R, Judge:

¶1        Manuel Florez appeals his convictions, following a jury trial, for three counts of molestation of a child and two counts of sexual conduct with a minor under age fifteen, for which he received concurrent and consecutive sentences totaling thirty-six years' imprisonment.  He argues that the evidence was insufficient to support his convictions for sexual conduct with a minor and that his sentences amount to unconstitutional cruel and unusual punishment.  We affirm for the reasons stated below.

## Factual and Procedural Background

¶2        We view the facts in the light most favorable to sustaining the verdicts.  *See State v. Crane*, 166 Ariz. 3, 5, 799 P.2d 1380, 1382 (App. 1990).  M., the victim and Florez's stepsister, testified in 2015 when she was thirteen about sexual episodes with Florez that had begun five years earlier.  The first time, Florez touched her genitals[2] under her clothes with his hand.  During that incident, Florez threatened to hurt M.'s family if she did not acquiesce.  She later testified this was the reason she "kept doing" what he wanted.  In a later incident, when M. was nine, Florez lay behind M. on a couch, positioned his clothed penis against her

---

[1]The Hon. Virginia C. Kelly, a retired judge of this court, is called back to active duty to serve on this case pursuant to orders of this court and our supreme court.

[2]The victim identified the genitals as "the part where you pee."

clothed buttocks, and put his hands on her waist and moved her body back and forth along his, parallel to the length of the couch.

¶3        In April 2014, when M. was eleven years old, Florez went to M.'s bed, touched her genitals over her clothes, and moved his clothed penis up and down against her legs or buttocks. At some point, he grabbed her hair and "kneel[ed] [her] back real hard." A few days later, Florez put his hand under M.'s pajamas and underwear, placed it on her genitals, and began "moving [his hand] up and down." When M. rolled onto her stomach, he got on top of her. In that position, he moved his clothed erect penis "up and down" against M.'s clothed buttocks.

¶4        M.'s grandmother walked in and saw what she later described as Florez "humping" M. as though "having sex through behind." M.'s grandmother told Florez to "get the hell out of [her] house." "[I]t's not what it looks like," said Florez. He "apologized a whole bunch of times" and pleaded with M.'s grandmother not to call the police.

¶5        A grand jury indicted Florez, charging him with one count of molestation of a child for the time he touched M.'s genitals when she was eight years old, one count of molestation of a child arising out of the incident on the couch, two counts of molestation of a child for touching M.'s genitals during the two April 2014 incidents, two counts of sexual conduct with a minor under age fifteen for masturbatory contact with his penis during the two April 2014 incidents, and one count of continuous sexual abuse of a child. On the first day of trial, the trial court dismissed the continuous sexual abuse count at the state's request. The jury was unable to reach a verdict on the count of child molestation that allegedly occurred when M. was eight years old, and the court dismissed that count upon the state's request. Florez was convicted of the other five offenses and sentenced to three concurrent ten-year terms of imprisonment for the molestation counts, to run consecutively to two consecutive thirteen-year terms of imprisonment for sexual conduct with a minor. After sentencing, the trial court sua sponte issued an order pursuant to A.R.S. § 13-603(L), allowing Florez to petition the Board of Clemency for a commutation of his sentence. It described the sentence as "clearly excessive," particularly in view of

the state's plea offer that limited the term to 3.75 years. We have jurisdiction over Florez's appeal pursuant to A.R.S. §§ 13-4031 and 13-4033(A)(1).

**Sufficiency of the Evidence**

**¶6**        Florez argues that, as a matter of law, "humping" through clothing cannot satisfy the statutory definition of "sexual intercourse," which is a necessary element of sexual conduct with a minor; therefore, the trial court erred by denying his motion for a directed verdict pursuant to Rule 20(a), Ariz. R. Crim. P., as to those two counts.[3] He asks us to reduce his convictions for sexual conduct with a minor to the lesser-included offense of molestation of a child and remand for resentencing.[4] The state maintains the evidence was sufficient to sustain the convictions.

---

[3]We note that the trial court's Amended Sentencing order stated that this "case did not involve oral/genital contact, intercourse, or penetration," which is arguably inconsistent with the court's Rule 20 ruling because—as discussed below—the offense of sexual conduct with a minor requires a factual finding that Florez engaged in sexual intercourse. However, the court notably did not use the statutorily defined phrase, "sexual intercourse," and expressed no doubt as to the verdicts or its previous Rule 20 ruling.

[4]Sexual conduct with a minor under age fifteen, A.R.S. § 13-1405, is a class 2 felony, as is the offense of molestation of a child under A.R.S. § 13-1410. The sentences for the two offenses differ significantly, however, under the Dangerous Crimes Against Children sentencing statute, A.R.S. § 13-705. If the victim of a masturbatory sexual conduct offense is under twelve years of age, as was the victim here, the defendant faces a minimum of thirteen years imprisonment and may face a life sentence; additionally, the sentence must be consecutive to any other sentence. § 13-705(B), (M). For molestation, the sentencing range is ten to twenty-four years, and the sentence may be served concurrently with other sentences involving the same victim. § 13-705(D), (M).

**¶7**      We review a trial court's ruling on a Rule 20 motion de novo, asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, ¶¶ 15-16, 250 P.3d 1188, 1191 (2011), *quoting State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). "Substantial evidence" under Rule 20 is "such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Mathers*, 165 Ariz. at 67, 796 P.2d at 869, *quoting State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980); *see also West*, 226 Ariz. 559, ¶ 16, 250 P.3d at 1191 (substantial evidence inquiry encompasses both direct and circumstantial evidence). When reasonable minds can draw different inferences from the evidence adduced, the trial court is without discretion to grant a Rule 20 motion and must submit the case to the jury. *West*, 226 Ariz. 559, ¶ 18, 250 P.3d at 1192.

**¶8**      A person commits sexual conduct with a minor under age fifteen by "intentionally or knowingly engaging in sexual intercourse . . . with any person" under age fifteen. A.R.S. § 13-1405(A)-(B). "Sexual intercourse" is statutorily defined as "penetration into the penis, vulva or anus by any part of the body or by any object or masturbatory contact with the penis or vulva." A.R.S. § 13-1401(A)(4).[5] The definition makes no distinction between the victim's penis, vulva, or anus and the perpetrator's. *See id.*

**¶9**      A person commits the lesser-included offense of molestation of a child by "intentionally or knowingly engaging in or causing a person to engage in sexual contact" with a child under age fifteen. A.R.S. § 13-1410(A); *see also State v. Ortega*, 220 Ariz. 320, ¶¶ 24-25, 206 P.3d 769, 777 (App. 2008) (molestation of child is lesser-included offense of sexual conduct with minor under age

_____

[5]The definitions of "sexual contact" and "sexual intercourse" were renumbered after Florez committed the crimes at issue, but the relevant text remained the same. *See* 2015 Ariz. Sess. Laws, ch. 209, § 2. For clarity, we cite the current version of the statute here and throughout, unless otherwise indicated.

fifteen); *In re Jerry C.*, 214 Ariz. 270, ¶ 13, 151 P.3d 553, 557 (App. 2007) (same). "Sexual contact" is defined by statute in relevant part as "any direct or indirect touching, fondling or manipulating of any part of the genitals[] [or] anus . . . by any part of the body or by any object or causing a person to engage in such contact." § 13-1401(A)(3). Again, the definition does not distinguish between the victim's genitals or anus and the perpetrator's. *See id.*; *State v. Mendoza*, 234 Ariz. 259, ¶ 6, 321 P.3d 424, 425-26 (App. 2014).

¶10 The state relies on *State v. Crane*, 166 Ariz. 3, 799 P.2d 1380 (App. 1990), to argue that non-oral, non-penetrative masturbatory contact with the body of another meets the statutory definition of "sexual intercourse." In *Crane*, the state charged the defendant with two counts of sexual conduct with a minor. *Id.* at 5, 799 P.2d at 1382. The evidence showed that on separate occasions the defendant had skin to skin contact with the minor female victim, placing his penis close to her genitalia. *Id.* at 8, 799 P.2d at 1385. We affirmed the trial court's denial of the defendant's motion for a directed verdict on both counts, concluding that "sexual intercourse" under the statute does not require penetration, but also encompasses "masturbative contact with the body of another." *Id.* at 9, 799 P.2d at 1386; *see* § 13-1401(A)(4) ("sexual intercourse" defined as "penetration . . . *or* masturbatory contact with the penis or vulva" (emphasis added)); *see also State v. Flores*, 160 Ariz. 235, 240, 772 P.2d 589, 594 (App. 1989) (masturbatory contact must involve at least two persons to constitute "sexual intercourse"). We observed that there is "no difference between a case where a defendant has a child manually masturbate him and where defendant positions the child's body, and his own, in such a way that contact with her body accomplishes the same purpose." *Crane*, 166 Ariz. at 9, 799 P.2d at 1386. We recognize, as Florez contends, that the conduct in *Crane* is arguably different from "humping" as described by the witnesses in this case, and we look to the statute for guidance.

¶11 When *Crane* was decided, the statutory definition of "sexual intercourse" required "penetration into the penis, vulva or anus by any part of the body or by any object or *manual* masturbatory contact with the penis or vulva." *See* 1993 Ariz. Sess.

Laws, ch. 255, § 23 (emphasis added); *see also Crane*, 166 Ariz. at 7, 799 P.2d at 1384.

¶12 The legislature removed "manual" from the definition not long after *Crane*, *see* 1993 Ariz. Sess. Laws, ch. 255, § 23, thus establishing the definition's current text, *see* A.R.S. § 13-1401(A)(4). This amendment removed an arguably limiting term and reaffirmed the inclusion of "masturbatory contact" with the victim as an act of sexual intercourse. Because the 1993 amendment occurred after *Crane*, we must assume the legislature understood conduct like simulated intercourse to be masturbatory contact. *See State v. Pennington*, 149 Ariz. 167, 168, 717 P.2d 471, 472 (App. 1985) (in enacting sexual touching statute, it is presumed legislature is aware of and approves existing case law interpreting same language); *see also* Gregory A. McCarthy, *Reforming Chapter 14 of Arizona's Criminal Code: Bringing Consistency, Clarity, Contemporaneity, and Constitutionality to Sexual Offenses in Arizona*, 33 Ariz. St. L.J. 229, 238 n.44 (2001) ("Accordingly, the Legislature understands 'masturbatory contact' as including non-manual touchings.").

¶13 Florez argues that "a common-sense reading of 'masturbatory contact' would require it to involve at least one of the parties to the contact to be touching with bare skin (and more likely both)." He reasons that a contrary interpretation would render "masturbatory contact with the penis" constituting "sexual intercourse" under § 13-1401(A)(4) no different from mere "indirect touching" of the penis constituting "sexual contact" under § 13-1401(A)(3). Completing the syllogism, he concludes that elimination of the distinction between sexual conduct with a minor and its lesser-included offense of molestation violates due process.

¶14 We agree with Florez insofar as he maintains "the legislature did not intend to perform a futile act" by creating a definition of masturbatory "sexual intercourse" purely coextensive with its definition of "sexual contact." *See Flores*, 160 Ariz. at 240, 772 P.2d at 594; *see also Taylor v. Cruikshank*, 214 Ariz. 40, ¶ 18, 148 P.3d 84, 88-89 (App. 2006) (court will endeavor to avoid construing statutory subsections as redundant or superfluous). It is not necessary to delineate the precise contours of these different terms if it can reasonably be said that "masturbatory contact" is something

more than mere "direct or indirect touching." *See* § 13-1401(A)(3)-(4); *cf. State v. Thompson*, 204 Ariz. 471, ¶¶ 15, 26, 65 P.3d 420, 424, 427 (2003) (first-degree murder statute constitutional only if definition of premeditation "provide[s] a meaningful distinction" between first- and second-degree murder).

**¶15**        Because "masturbatory contact" is not defined, we may look to respected dictionaries to ascertain the phrase's plain meaning and construe it accordingly. *See, e.g., W. Corr. Grp., Inc. v. Tierney*, 208 Ariz. 583, ¶ 17, 96 P.3d 1070, 1074 (App. 2004). "Masturbation" is defined as "erotic stimulation of the genital organs commonly resulting in orgasm and achieved by manual *or other bodily contact* exclusive of sexual intercourse, by *instrumental manipulation*, occas[ionally] by sexual fantasies, or by various combinations of these agencies." *Webster's Ninth New Collegiate Dictionary* 732 (1985) (emphasis added). This definition includes non-penetrative, non-oral "humping" in which any part of the body of another is used to stimulate the penis or vulva. *See Crane*, 166 Ariz. at 9, 799 P.2d at 1386. Nothing in the dictionary definition suggests that contact with skin is a necessary component of masturbation; rather, it can involve a "combination[]" of "other bodily contact" and "instrumental manipulation" with the penis or vulva via objects such as clothing. *Webster's Ninth New Collegiate Dictionary* 732 (1985); *cf. Mendoza*, 234 Ariz. 259, ¶ 10, 321 P.3d at 426 (touching may be sexual despite clothing and blanket).

**¶16**        Florez urges us to adopt contact with skin as a bright line dividing masturbatory "sexual intercourse" from mere "sexual contact," but he cites no authority for such a rule and we are aware of none. Indeed, the plain language of the statute does not make any reference to nudity or contact with skin as a requirement.[6]

---

[6] Nor can we apply the rule of lenity here, because the language of the statute is not ambiguous. *See generally State v. Johnson*, 171 Ariz. 39, 42, 827 P.2d 1134, 1137 (App. 1992) (rule of lenity applies to penal statutes "susceptible to different interpretations").

¶17 Florez also argues our decision in *Mendoza* implies that "humping" through clothing is distinguished from skin-on-skin contact and can only result in a conviction for molestation. In *Mendoza*, even though the defendant and victim were both clothed and were separated by a blanket, we held evidence that the defendant "humped" the victim by rubbing his genital area against her buttocks sufficient to sustain his conviction for child molestation. 234 Ariz. 259, ¶¶ 2-11, 321 P.3d at 425-27. We observed that the mere interposition of clothing or a blanket does not necessarily deprive a touching of its sexual character. *Id.* ¶ 10, *quoting Moss v. Dist. Court of Tulsa Cty.*, 795 P.2d 103, 105 (Okla. Crim. App. 1989). We further noted a victim can suffer emotional harm whether or not the defendant makes direct skin-to-skin contact. *See id.* A rational jury "could infer that Mendoza was rubbing his crotch or genital area against the victim's body to indirectly touch or manipulate his genitals," we concluded— "[i]ndeed, little else could be accomplished by such behavior." *Id.* ¶ 9.

¶18 While we acknowledge Florez's point that the actual touching in his case was very similar to the facts in *Mendoza*, our analysis in that case was necessarily limited to molestation because it was the offense for which Mendoza was charged and convicted. *Id.* ¶ 1. *Mendoza* does not preclude the conclusion that the same conduct may constitute "masturbatory contact with the penis or vulva" pursuant to § 13-1401(A)(4). Whether such a touching constitutes "masturbatory contact" as opposed to mere "direct or indirect touching, fondling or manipulating" in a particular case is a factual question for the jury.

¶19 The decision whether to charge an offense with more serious consequences is a matter of prosecutorial discretion, as long as there is factual support and the absence of discrimination against any class of defendants. *See State v. Gagnon*, 236 Ariz. 334, ¶ 10, 340 P.3d 413, 415 (App. 2014); *see also State v. Holle*, 240 Ariz. 301, ¶ 44, 379 P.3d 197, 206 (2016) (prosecutors' wide discretion "does not warrant ignoring" statute's plain language). In this case, the indictment describes "masturbatory contact with defendant's penis" for both sexual conduct counts. Florez could have been charged

with molestation for the same acts but the prosecutor chose, and the grand jury indicted, the more serious offense. Finally, there is no evidence suggesting the prosecution was based on improper classification.

**¶20** In sum, a prosecutor has the discretion to charge "humping" under the greater offense of sexual conduct with a minor, so long as the conduct described is masturbatory contact with the penis or vulva as required by § 13-1401(A)(4).[7] A reasonable jury could conclude that Florez knowingly or intentionally stimulated his penis by rubbing it against the body of a person under age fifteen. *See* § 13-1405(A)-(B). The fact that clothing separated his penis from the victim's body does not, of necessity and as a matter of law, exclude his acts from the statutory definition of "sexual intercourse." *See* § 13-1401(A)(4). The evidence was sufficient to support his convictions for sexual conduct with a minor, and the trial court did not err in denying his Rule 20 motion on those counts.[8]

---

[7]We are aware that the decision to charge the greater offense may result in unintended consequences or arguably anomalous instructions if the jury also considers the lesser offense. Specifically, pursuant to A.R.S. § 13-1407(E), a lack of sexual motivation is an affirmative defense to the lesser offense of molestation but not to the greater offense of sexual conduct with a minor. It is difficult to discern a policy reason to remove this affirmative defense in certain circumstances, but our supreme court recently reaffirmed the principle that within constitutional limits, the legislature alone determines which defenses are available. *Holle*, 240 Ariz. 301, ¶ 9, 379 P.3d at 199.

[8]We share the trial court's concern that Florez's sentence is excessive, and we encourage the Board of Clemency to consider commutation in this case. Yet we are bound to effectuate the clear intent of the legislature, which rejected bill language that would have differentiated between sexual misconduct involving clothed versus unclothed victims. *See, e.g.*, S.B. 1490, 40th Leg., 2d Reg. Sess. §§ 8, 10, 12 (Ariz. 1992) (introduced version) (proposing new definition for "indirect sexual contact," i.e., touching outer clothing

**Cruel and Unusual Punishment**

**¶21**        Florez next argues his sentence amounts to cruel and unusual punishment. "We review constitutional issues de novo." *State v. Carlson*, 237 Ariz. 381, ¶ 57, 351 P.3d 1079, 1095 (2015). Florez did not object on Eighth Amendment grounds below, so we review only for fundamental, prejudicial error. [9] *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607-08 (2005). The imposition of an illegal sentence constitutes fundamental, prejudicial error. *State v. McPherson*, 228 Ariz. 557, ¶ 4, 269 P.3d 1181, 1183 (App. 2012).

**¶22**        Both the United States and Arizona constitutions prohibit cruel and unusual punishment.[10] U.S. Const. amend. VIII;

---

covering genitals, anus, or female breast, and making indirect sexual contact with minor under fifteen sexual abuse, a class 3 felony); *cf.* 1993 Ariz. Sess. Laws, ch. 255, §§ 23, 25 (eschewing term "indirect sexual conduct" and removing limitation that masturbatory contact be "manual" to constitute "sexual intercourse" underpinning sexual conduct with minor); § 13-1405 (sexual conduct with minor under fifteen is class 2 felony and dangerous crime against children). Despite our concern that mixing clothed humping with "sexual intercourse" represents a "poor policy choice" in cases such as the one before us because of the severe mandatory sentence, that policy choice is one for the legislature to make, and we "are not at liberty to rewrite [the] statute under the guise of judicial interpretation," *Tucson Unified Sch. Dist. v. Borek ex rel. Cty. of Pima*, 234 Ariz. 364, ¶ 11, 322 P.3d 181, 185 (App. 2014), *quoting New Sun Bus. Park, LLC v. Yuma Cty.*, 221 Ariz. 43, ¶ 16, 209 P.3d 179, 183 (App. 2009). The power to create or amend such statutes exists solely within the legislature.

[9]The state contends Florez forfeited fundamental error review because his argument lacks sufficient detail. But we agree with Florez that his analysis differentiating between more and less important issues was appropriate and sufficient.

[10] Florez asks us to extend the protections of the state constitutional provision beyond those of the Eighth Amendment in

Ariz. Const. art. II, § 15.  It is well settled that the length of a prison sentence can serve as the basis for an Eighth Amendment challenge. *See Atkins v. Virginia*, 536 U.S. 304, 311 (2002) (reviewing cases).  And although "courts are extremely circumspect in their Eighth Amendment review of prison terms[,] . . . noncapital sentences are subject . . . to a 'narrow proportionality principle' that prohibits sentences that are 'grossly disproportionate' to the crime."  *State v. Berger*, 212 Ariz. 473, ¶ 10, 134 P.3d 378, 380 (2006), *quoting Ewing v. California*, 538 U.S. 11, 20-21 (2003) (plurality opinion).

**¶23**		When reviewing a prison sentence under the Eighth Amendment, the court first determines whether "there is a threshold showing of gross disproportionality by comparing 'the gravity of the offense [and] the harshness of the penalty.'"  *Id.* ¶¶ 11-12, *quoting Ewing*, 538 U.S. at 28 (alteration in *Berger*).  In so doing, the court "must accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences," if in fact those policy judgments have a rational penological basis.  *See id.* ¶¶ 13, 17.  A particular defendant's prison sentence is not grossly

---

cases like his in which consecutive sentences are statutorily mandated.  Our supreme court declined to do so in *State v. Davis*, 206 Ariz. 377, ¶ 12, 79 P.3d 64, 67 (2003), which Florez contends was a case-specific decision.  We do not find *Davis* so limited.  The court subsequently confronted a similar sentencing challenge, but did not undertake a separate Arizona constitutional analysis despite recognition of the court's role "in determining the constitutionality of sentences."  *State v. Berger*, 212 Ariz. 473, n.14, 134 P.3d 378, 394 n.14 (2006) (Berch, V.C.J., concurring in part and dissenting in part).  Because *Berger* concluded the sentence imposed did not violate the Eighth Amendment, it would have been required to conduct additional analysis if Article 2, Section 15 of the Arizona Constitution provided greater protection than federal law.  *See also State v. McPherson*, 228 Ariz. 557, ¶ 16, 269 P.3d 1181, 1187 (App. 2012) (decision to interpret cruel and unusual punishment under state constitutional provision more broadly than federal constitutional provision "would be in the exclusive purview of [our supreme] court").

disproportionate to the crime if it "arguably furthers the State's penological goals" and "reflects a 'rational legislative judgment'" to which the court owes deference. *Id.* ¶ 17, *quoting Ewing*, 538 U.S. at 30. If, however, the initial inquiry leads to an inference of gross disproportionality, a court may proceed to test that inference by conducting inter-jurisdictional and intra-jurisdictional comparative analyses. *Id.* ¶ 12. Finally, even if a sentencing scheme does not violate the Eighth Amendment generally, in "extremely rare case[s]" the specific application of that scheme to the facts of a defendant's case may result in an unconstitutionally disproportionate sentence. *Id.* ¶ 39.

**¶24** In *Berger*, our supreme court held that a ten-year sentence for possession of child pornography did not give rise to an inference of gross disproportionality. *Id.* ¶ 29. In support of its holding, the *Berger* court noted several cases affirming the imposition of severe prison sentences. *Id.* ¶ 30; *see Ewing,* 538 U.S. at 19, 30-31 (upholding sentence of twenty-five years to life for felony grand theft when defendant had four previous convictions for serious or violent felonies); *Harmelin v. Michigan*, 501 U.S. 957, 961, 994, 996 (1991) (upholding first-time offender's life sentence for possessing 672 grams of cocaine); *State v. Jonas*, 164 Ariz. 242, 249, 792 P.2d 705, 712 (1990) (upholding recidivist offender's twenty-five year sentence for selling $1 marijuana cigarette to minor). Possession of child pornography is undeniably a serious crime, punishable as a felony in most states. *Berger*, 212 Ariz. 473, ¶¶ 26, 34-35, 134 P.3d at 478-479, 480. Moreover, "the legislature had a 'reasonable basis for believing' that mandatory and lengthy prison sentences for the possession of child pornography" would substantially advance its "goal of combating the sexual abuse and exploitation inherent in child pornography." *Id.* ¶¶ 19, 23, *quoting Ewing*, 538 U.S. at 28. Imposing the ten-year sentence, then, "[wa]s consistent with the state's penological goal[s]." *Id.* ¶ 33.

**¶25** In this case, Florez received a ten-year sentence for each molestation conviction and a thirteen-year sentence for each conviction for sexual conduct with a minor. The legislature has designated both molestation of a child and sexual conduct with a minor as "dangerous crimes against children" subject to enhanced

sentences. A.R.S. § 13-705(P)(1)(d)-(e). The legislature enacted this provision in order to "reach criminals who specifically prey on children"—one of society's most vulnerable groups. *State v. Williams*, 175 Ariz. 98, 102, 854 P.2d 131, 135 (1993). The goal is to punish and deter those who "pose a direct and continuing threat to children." *Id.* at 102-03, 854 P.2d at 135-36. As in *Berger*, the statutes addressing molestation and sexual conduct with a minor advance the state's goal of combating the sexual abuse. 212 Ariz. 473, ¶ 19, 134 P.3d at 382. The sentencing schemes do not give rise to the inference of gross disproportionality; therefore, we need not consider the inter- and intra-jurisdictional comparisons. *Id.* ¶ 12.

¶26         Florez argues that the specific facts and circumstances of his case nevertheless render his sentence grossly disproportionate. Specifically, Florez argues our supreme court's decision in *State v. Davis*, 206 Ariz. 377, 79 P.3d 64 (2003), requires us to take into account the mandatory consecutive nature of his sentences. *See generally* § 13-705(C), (D), (M). As a general rule, the consecutive nature of sentences has no bearing on the gross disproportionality inquiry. *Berger*, 212 Ariz. 473, ¶ 27, 134 P.3d at 384. "[I]f the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." *Id.* ¶ 28. Yet a constitutional sentencing scheme mandating consecutive sentences "may still, in its application to 'the specific facts and circumstances' of a defendant's offense, result in an unconstitutionally disproportionate sentence." *Id.* ¶ 39, *quoting Davis*, 206 Ariz. 377, ¶ 31, 79 P.3d at 71; *see also Davis*, 206 Ariz. 377, ¶ 37, 79 P.3d at 72. A comparison of *Davis* to *Berger* illustrates the point.

¶27         In *Davis*, our supreme court found an Eighth Amendment violation when a defendant received four consecutive thirteen-year sentences for four counts of sexual misconduct with a minor arising out of his non-coerced sex with two teenage girls. 206 Ariz. 377, ¶¶ 7, 36-37, 79 P.3d at 67, 71-72. The court did not hold that a single thirteen-year sentence for the crime of sexual misconduct with a minor gave rise to an inference of gross disproportionality in the abstract. *See id.* ¶ 47 (recognizing

"legislature's right to impose a thirteen-year minimum sentence for dangerous crimes against children" and "to require consecutive sentences for this type of offense"). Instead, it relied on factors specific to the defendant's situation, which placed him outside the core of a broad statute, before concluding that a sentence of four consecutive thirteen-year terms was grossly disproportionate. *Id.* ¶¶ 36-37; *see also Berger*, 212 Ariz. at 481, ¶ 44, 134 P.3d at 387. Those factors included: (1) the trial judge, the jury, the presentence report writer, and even the victims' mothers all recognized the injustice of the sentence; (2) the defendant's sexual relationship with the girls was voluntary and involved neither actual nor threatened violence; (3) the defendant had no adult criminal offenses and no history of crimes against children; (4) post-pubescent sexual activity is a reality of adolescent life; (5) there was evidence in the record that the defendant's intelligence and maturity fell far below that of the typical young adult; and, (6) the defendant's conduct was caught up in the "very broad sweep of the governing statute" that did not distinguish between objectively predatory behavior and "the more benign boyfriend-girlfriend situation in which one party is older than eighteen and the other is younger than fifteen." *Davis*, 212 Ariz. 473, ¶ 36, 134 P.3d at 385. For these reasons, the court concluded the case "crie[d] out for departure from [the] general rule" that a "court normally will not consider the imposition of consecutive sentences in a proportionality inquiry." *Id.* ¶ 47.

¶28 In contrast, three years after *Davis*, the court affirmed the application of mandatory consecutive sentences in *Berger*, consisting of ten-year prison terms for each of twenty images of child pornography Berger possessed. 212 Ariz. 473, ¶¶ 4, 6, 51, 134 P.3d at 380, 388. Citing *Davis*, Berger argued that his circumstances also warranted rejection of consecutive sentences. *Berger*, 212 Ariz. 473, ¶ 37, 134 P.3d at 385. The court disagreed and clarified: "The specific facts and circumstances considered relevant in *Davis* are those that go to the defendant's degree of culpability for the offense, not to a showing that the defendant is . . . a good person or a promising prospect for rehabilitation." *Berger*, 212 Ariz. 473, ¶ 47, 134 P.3d at 387. It found the circumstances of Berger's case—that he was a married high school teacher with no prior criminal record— did not reduce his culpability. *Id.* ¶ 49. Berger knowingly acquired

and saved numerous images "graphically depicting sordid and perverse sexual conduct with pre-pubescent minors" over a six-year period. *Id.* ¶ 35. His offense was "at the core, not the periphery" of the conduct the legislature sought to deter and punish via the child pornography statute. *Id.* ¶ 44. Therefore, the specific facts of Berger's case "only amplifie[d] the conclusion that he consciously sought to do exactly that which the legislature sought to deter and punish." *Id.* ¶ 49.

**¶29** Florez argues his circumstances and offenses more closely approximate *Davis,* so as to render consecutive sentences grossly disproportionate. It is true that some of the factors the *Davis* court delineated are also present here. Like the defendant in *Davis*, Florez was young and had no adult criminal record before his arrest in this case. Also, there is evidence in the record that Florez's developmental age lagged behind that of the average young adult.[11] Finally, the trial court expressed concern "that the statutorily-mandated sentences were clearly excessive," a factor Florez contends is the "most important."

**¶30** While we acknowledge these similarities between Florez's case and *Davis*, we cannot ignore important differences between them. The most obvious is that unlike the victims in *Davis*, Florez's victim was not a post-pubescent teenager who had consented to or sought out the sexual encounters she had with him. *Cf.* 206 Ariz. 377, ¶ 36, 79 P.3d at 71. Rather, she was Florez's eleven-year-old stepsister. Florez's use of threats of violence to carry out his crimes is another important distinguishing fact. At trial, the victim testified Florez had threatened to hurt her family the first time he touched her sexually, and she was afraid he would carry out his threats if she did not oblige him. The victim also testified that he had pulled her hair and pressed his knee into her back. Finally, there was no indication in the record that the victim or her immediate family felt the sentencing range was unjust.

---

[11]The mitigation specialist concluded: "While it is difficult to estimate [Florez's] true developmental age, it was certainly less than 17 or 18 at the time of the instant offense."

**¶31**    Taken together, these differences place Florez's misconduct outside the realm of the "more benign boyfriend-girlfriend situation" that existed in *Davis*. *Id.* As in *Berger,* the facts and circumstances of Florez's offense exemplify the type of conduct against children that the legislature determined should be subject to enhanced sentences. 212 Ariz. 473, ¶ 44, 134 P.3d at 386. "Thus, there is no basis here to depart from the general rule that the consecutive nature of sentences does not enter into the proportionality analysis." *Id.* Florez has not met his burden of showing fundamental error.

## Disposition

**¶32**    For the foregoing reasons, we affirm Florez's convictions and sentences.