NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOSEF TIMOTHY DIXON, *Appellant.*

No. 1 CA-CR 18-0831
FILED 5-26-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-005978-001
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

Bain & Lauritano, PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

_____

**M c M U R D I E**, Judge:

**¶1**        Josef Timothy Dixon appeals his convictions and sentences for 14 counts of child sex trafficking,[1] one count of possession of marijuana, and one count of possession of drug paraphernalia (marijuana). For the following reasons, we affirm.

## FACTS[2] AND PROCEDURAL BACKGROUND

**¶2**        On May 5, 2017, a plainclothes police officer, surveilling a convenience store known to host drug- and prostitution-related activity, noticed Dixon enter the parking lot driving a vehicle displaying out-of-state license plates. Dixon parked the car and engaged in what the officer believed to be a hand-to-hand drug deal. The officer radioed for backup before stopping Dixon. At the stop, the officer asked the three female passengers in the vehicle to exit. Two of the female passengers appeared to be very young and nervous. Suspecting they might be involved in

_____

[1]        When the prostitution-related crimes were committed, Arizona Revised Statutes ("A.R.S.") section 13-3212 used the term "child prostitution" to describe the offenses for which Dixon was charged. Effective August 9, 2017, however, the legislature amended the statute and changed the term used to describe the offense to "child sex trafficking." 2017 Ariz. Sess. Laws, ch. 167, § 10 (1st Reg. Sess.). Because this change in terminology was stylistic and the amendment did not substantively alter the statutory provisions relevant to this decision, we use the current term, "child sex trafficking," to describe the offenses in this case.

[2]        We view the facts in the light most favorable to upholding the verdicts and resolve all reasonable inferences against the defendant. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

prostitution, the officer moved the two girls out of earshot of Dixon and the other female passenger and interviewed them separately.

¶3        Upon questioning, the two girls identified themselves as A.B. and B.A. and stated that they were 15 and 16 years old, respectively. A.B. and B.A. told the officer they were working as prostitutes. They informed the officer that Dixon and two other women—Keisha Graff and Meisha Tolliver—were involved in placing sex advertisements for them and took the money they made from prostitution. A.B. and B.A. also stated that Tolliver and Dixon worked together to prostitute them and gave the officer Tolliver's phone number. Based on this information, the officer arrested Dixon.

¶4        During a search of Dixon incident to his arrest and an inventory search of the vehicle, officers discovered two baggies of marijuana on Dixon and, in the center console of the vehicle, a digital scale and a jar containing marijuana. Sometime later, police arrested Tolliver when she appeared at the convenience store to collect the vehicle, which she had rented under her name.

¶5        Eventually, the State charged Dixon with 16 counts of child sex trafficking, each a class 2 felony, one count of possession or use of marijuana, a class 6 felony, and one count of possession of drug paraphernalia (marijuana), a class 6 felony. At his arraignment, Dixon elected to represent himself with the assistance of advisory counsel.

¶6        From September to October 2018, the court conducted a 16-day trial. During the trial, the State called both A.B. and B.A. to testify to Dixon's role in their involvement with prostitution generally and to six specific instances of prostitution, or "tricks," that occurred from April to May 2017. The State also called Tolliver, who was initially charged as a co-defendant in the case but agreed to testify against Dixon as part of a plea agreement, to corroborate A.B.'s and B.A.'s testimony. After the State's case, the Court denied Dixon's motion for a judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20. Dixon then proceeded to present his defense and, although he elected not to testify, he recalled several witnesses, including B.A. and Tolliver. The jury ultimately found Dixon guilty of 14 of the child-sex-trafficking counts and the two marijuana-related counts. The jury deadlocked on the remaining child-sex-trafficking counts.

¶7        At sentencing, the court dismissed the two deadlocked counts without prejudice. The court then sentenced Dixon to the presumptive term

of 13.5 years' imprisonment for each of the 14 counts of child sex trafficking, and the presumptive term of one year's imprisonment for the marijuana and drug-paraphernalia counts. The court ordered the possession of marijuana and drug paraphernalia counts to be served concurrently, but all other counts were required to be served consecutively under A.R.S. § 13-3212(D)(1). The court gave Dixon 574 days' presentence incarceration credit for each count. Combined, the cumulative length of Dixon's sentence totaled nearly 190 years. Dixon appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### A.    Reasonable Evidence Supports Dixon's Convictions for the 14 Counts of Child Sex Trafficking.

¶8         Dixon argues the court erred by denying his motion for a judgment of acquittal. Specifically, Dixon contends there was insufficient evidence to support his convictions for the 14 counts of child sex trafficking. We review the denial of a Rule 20 motion *de novo*. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). Because Dixon presented a case after the court denied his Rule 20 motion, "we evaluate the motion based on the entire record, including any evidence [Dixon] supplied." *State v. Nunez*, 167 Ariz. 272, 279 (1991).

¶9         When a Rule 20 motion is made, "the court must enter a judgment of acquittal on any offense charged . . . if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). "'Substantial evidence,' Rule 20's lynchpin phrase, 'is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of [a] defendant's guilt beyond a reasonable doubt.'" *West*, 226 Ariz. at 562, ¶ 16 (internal quotation marks omitted) (quoting *State v. Mathers*, 165 Ariz. 64, 67 (1990)). In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Mathers*, 165 Ariz. at 66). "Both direct and circumstantial evidence should be considered in determining whether substantial evidence supports a conviction." *Id.* "Criminal intent, being a state of mind, is shown by circumstantial evidence. [A] [d]efendant's conduct and comments are evidence of his state of mind." *State v. Bearup*, 221 Ariz. 163, 167, ¶ 16 (2009) (quoting *State v. Routhier*, 137 Ariz. 90, 99 (1983)). "The sufficiency of the evidence must be tested against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005).

¶10        Here, the 14 counts of child sex trafficking stemmed from three theories of criminal liability under A.R.S. § 13-3212(A). In counts 1 and 2, the State alleged that Dixon knowingly provided a means by which A.B. and B.A. engaged in prostitution by working with Graff and Tolliver to create and manage two fake profiles for A.B. and B.A. on a dating website to arrange sexual encounters. A.R.S. § 13-3212(A)(8). In counts 5, 7, 9, 11, 13, and 15, the State alleged that Dixon knowingly transported or financed the transportation of A.B., B.A., or both with the intent that A.B., B.A., or both engage in prostitution on four occasions that occurred between April and May 2017. A.R.S. § 13-3212(A)(7). And in counts 4, 6, 8, 10, 12, and 14, the State alleged that Dixon knowingly received a benefit according to an agreement to participate in the proceeds of the prostitution of A.B., B.A., or both. A.R.S. § 13-3212(A)(5). For each count, the State also alleged in the alternative that Dixon was criminally liable for the offense as an accomplice.

¶11        As defined by A.R.S. § 13-3211(5), "'Prostitution' means engaging in or agreeing or offering to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration." A "benefit" is defined in the criminal code as "anything of value or advantage, present or prospective." A.R.S. § 13-105(3). And an "accomplice" means:

> [A] person . . . who with the intent to promote or facilitate the commission of an offense:
>
> 1. Solicits or commands another person to commit the offense; or
>
> 2. Aids, counsels, agrees to aid or attempts to aid another person in planning or committing an offense.
>
> 3. Provides means or opportunity to another person to commit the offense.

A.R.S. § 13-301. We address each count of child sex trafficking in turn.

¶12        Concerning counts 1 and 2, the State elicited testimony from Tolliver about Dixon's role, along with her and Graff, in creating and utilizing the fake profiles on the dating website to schedule tricks for A.B. and B.A. Tolliver testified that: (1) it was her idea to use the fake profiles; (2) Dixon was present while they set up the fake profiles for A.B. and B.A.; (3) Dixon suggested that they use text messages, and not the dating website's messaging system, to finalize the tricks so they could not be tracked; and (4) Dixon collaborated with her and Graff to organize the tricks

through the dating website and text messages. The State corroborated Tolliver's testimony by introducing the text messages between Tolliver's phone and "Johns" (individuals wishing to pay for sexual acts) that referenced the dating website and discussed details of the tricks. Finally, the State also submitted a report documenting information extracted from Dixon's phone that showed that Dixon had the app for the dating website installed on his phone and that his phone contained username and password information for the app that referenced one of the names associated with A.B. and B.A.'s fake profiles.

¶13 As for the remaining 12 counts, the State elicited testimony from A.B., B.A., Tolliver, or some combination of them that Dixon: (1) drove A.B., B.A., or both to each trick referenced in the indictment (2) actively participated in setting the price for the tricks along with Tolliver and Graff and (3) directly or ultimately received the money A.B. and B.A. were paid. All three women also testified that Dixon was their "pimp" or "Alpha," and that he controlled nearly all the money A.B. and B.A. received from the tricks. Tolliver specified that this included the use of cash for gasoline for the vehicle used to transport A.B. and B.A. Facebook messages introduced into evidence by the State further corroborated Dixon's knowing involvement in the prostitution scheme.

¶14 The evidence was sufficient to support Dixon's convictions. Although A.B., B.A., and Tolliver could not recall every detail of the events of April and May 2017, and at times contradicted one another, it is the province of the jury and not this court to "weigh[] the evidence and determine[] the credibility of witnesses." *State v. Cid*, 181 Ariz. 496, 500 (App. 1995). "Because a jury is free to credit or discredit testimony, we cannot guess what they believed, nor can we determine what a reasonable jury should have believed." *State v. Bronson*, 204 Ariz. 321, 328, ¶ 34 (App. 2003) (quoting *State v. Bass*, 198 Ariz. 571, 582, ¶ 46 (2000)). Accordingly, the evidence introduced at trial was sufficient to permit a jury to find beyond a reasonable doubt that Dixon, whether through his direct conduct or as an accomplice: (1) knowingly provided a means for A.B. and B.A. to engage in prostitution; (2) knowingly transported or financed the transportation of A.B., B.A., or both with the intent to engage in prostitution for each of the occasions referenced in the indictment; and (3) knowingly received a benefit under an agreement to participate in the proceeds of the prostitution of A.B., B.A., or both, for the occasions referenced.

**B.** **Dixon's Sentences Do Not Violate the Eighth Amendment's Prohibition on Grossly Disproportionate Sentences.**

**¶15** Dixon argues the cumulative length of his sentences for the 14 counts of child sex trafficking, 189 years, constitutes cruel and unusual punishment in violation of the United States and Arizona constitutions. U.S. Const. amend. VIII; Ariz. Const. art. 2, § 15. Because Dixon objected to the sentences on Eighth Amendment grounds before the superior court, we review for harmless error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). We review constitutional questions *de novo*. *State v. Florez*, 241 Ariz. 121, 127, ¶ 21 (App. 2016).

**¶16** *State v. Berger*, 212 Ariz. 473 (2006), provides the relevant analysis for such questions. In *Berger*, our supreme court considered whether a defendant's 20 consecutive ten-year sentences for possessing child pornography violated the Eighth Amendment's prohibition on sentences of incarceration that are "grossly disproportionate" to the crime. *Id.* at 475, ¶¶ 5–7. Synthesizing relevant United States Supreme Court precedent, the court articulated a two-part test to assess Eighth Amendment challenges to the length of prison sentences:

> [A] court first determines if there is a threshold showing of gross disproportionality by comparing "the gravity of the offense [and] the harshness of the penalty." If this comparison leads to an inference of gross disproportionality, the court then tests that inference by considering the sentences the state imposes on other crimes and the sentences other states impose for the same crime.

*Id.* at 476, ¶ 12 (citations omitted) (quoting *Ewing v. California*, 538 U.S. 11, 28 (2003)). The reviewing court need not go further than the threshold showing if it determines that: (1) "the legislature 'has a reasonable basis for believing that [a sentencing scheme] advance[s] the goals of [its] criminal justice system in any substantial way,'" *id.* at 477, ¶ 17 (alterations in original) (internal quotation marks omitted) (quoting *Ewing*, 538 U.S. at 28); and (2) the particular defendant's sentence "furthers the State's penological goals and thus reflects 'a rational legislative judgment, entitled to deference,'" *id.* (quoting *Ewing*, 538 U.S. at 30).

**¶17** Critical to Dixon's challenge here, *Berger* also affirmed the general rule that Arizona courts "will not consider the imposition of consecutive sentences in a proportionality inquiry." *Id.* at 479, ¶ 27 (quoting *State v. Davis*, 206 Ariz. 377, 387, ¶ 47 (2003)). "[I]f the sentence for a

particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." *Id.* at ¶ 28. The reviewing court will only depart from this rule if the "'specific facts and circumstances' of a defendant's offense[] result in an unconstitutionally disproportionate sentence." *Id.* at 480, ¶ 39 (quoting *Davis*, 206 Ariz. at 384, ¶ 32).

**¶18**        Applying the principles outlined in *Berger* to this case, we conclude that a 13.5-year sentence is not grossly disproportionate to Dixon's crime of knowingly aiding in and benefiting from the prostitution of two minors. The penological goals served by the severe punishment of child sex trafficking are no less powerful than those underlying the child-pornography sentences found constitutional in *Berger*. "It is evident beyond the need for elaboration that a State's interest in safeguarding the physical and psychological well-being of a minor is compelling." *Berger*, 212 Ariz. at 477, ¶ 18 (internal quotation marks omitted) (quoting *Osborne v. Ohio*, 495 U.S. 103, 109 (1990)). And the child sex trafficking statute, A.R.S. § 13-3212, was enacted in the same legislation discussed in *Berger*, which declared that the public policy of Arizona was to "protect all children of this state from being sexually exploited" and to "prevent any person from benefiting financially or otherwise from the sexual exploitation of children." 1978 Ariz. Sess. Laws, ch. 200, §§ 1, 2(B)(1), (3) (2d Reg. Sess.); 212 Ariz. at 478, ¶ 20.

**¶19**        Criminalizing knowing participation in the prostitution of a minor directly serves to further these interests by deterring individuals from participating in such schemes. Thus, the legislature had a "reasonable basis for believing" that imposing mandatory and lengthy prison sentences for child sex trafficking would "advance [] the goals of [Arizona's] criminal justice system in [a] substantial way." *Berger*, 212 Ariz. at 478, ¶ 23 (alterations in original) (quoting *Ewing*, 538 U.S. at 28). Likewise, Dixon's sentences furthered the State's penological goals to deter and punish the sexual exploitation of children for another's benefit. The evidence presented at trial established that Dixon knowingly aided and benefited from the prostitution of A.B. and B.A. by assisting in the creation and usage of their fake website profiles, transporting A.B. and B.A., and collecting the money they received.

**¶20**        And considering the sentencing scheme for child sex trafficking's application to "the specific facts and circumstances" of Dixon's offenses does not alter our conclusion or persuade us to consider the consecutive nature of his sentences. Here, as in *Berger*, Dixon's conduct was

"at the core, not the periphery, of the prohibitions" codified in A.R.S. § 13-3212(A)(5), (7), and (8)—the facilitation of a minor in prostitution for profit. 212 Ariz. at 481, ¶ 44. As outlined in the previous section, the evidence showed that Dixon knowingly aided in the prostitution of two minors for his financial gain. In other words, Dixon "consciously sought to do exactly that which the legislature sought to deter and punish." *Id.* at 482, ¶ 49. Under these circumstances, Dixon's 14 consecutive 13.5-year sentences are not grossly disproportionate to his crimes.

## CONCLUSION[3]

¶21        We affirm Dixon's convictions and sentences.

---

[3]        In reviewing the record of this case, we discovered two sentencing errors not discussed by either party. First, the superior court's oral pronouncement of sentence and sentencing minute entry states that it awarded Dixon 574 days' presentence incarceration credit for every one of Dixon's 16 sentences, including the 15 sentences that were required to run consecutively. This was error. A defendant sentenced to consecutive sentences "is not entitled to presentence incarceration credit on more than one of those sentences, even if the defendant was in custody pursuant to *all* of the underlying charges prior to trial." *State v. McClure*, 189 Ariz. 55, 57 (App. 1997). However, because this error resulted in an illegally lenient sentence, and the State failed to cross-appeal, we lack jurisdiction to address the issue. *State v. Dawson*, 164 Ariz. 278, 286 (1990).



AMY M. WOOD • Clerk of the Court
FILED: AA

Second, for the possession-of-marijuana and possession-of-drug-paraphernalia counts, the court sentenced Dixon to the presumptive term of imprisonment, one year, under A.R.S. § 13-702(D), the sentencing scheme for first-time felony offenders. This was also error because "Arizona law makes probation mandatory for certain first and second drug convictions," *State v. Shively*, 234 Ariz. 560, 562, ¶ 7 (App. 2014), including a first or second conviction for "personal possession or use of a controlled substance or drug paraphernalia," subject to certain exceptions not relevant here, A.R.S. § 13-901.01(A), (B), (H). Thus, had the court not also erroneously awarded Dixon full presentence incarceration credit for each of his 16 sentences, this error would require correction because, under the court's sentencing order, Dixon would have received 365 days' presentence incarceration credit towards illegally imposed sentences. However, because Dixon was both credited for the full term of imprisonment imposed for the marijuana-related counts instead of probation *and* awarded full presentence credit for each of his other sentences, the court's sentencing order constituted an illegally lenient sentence, which the State was required to appeal or cross-appeal. It did not do so, and, as a result, we lack jurisdiction to address this matter further. *Dawson*, 164 Ariz. at 286.