IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

————————————————

THE STATE OF ARIZONA,
*Appellee*,

*v.*

EVAN MCCARRICK JERALD,
*Appellant*.

No. 2 CA-CR 2021-0105
Filed April 15, 2024

————————————————

Appeal from the Superior Court in Pima County
No. CR20180255001
The Honorable Howard Fell, Judge Pro Tempore

**AFFIRMED**

————————————————

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Casey D. Ball, Assistant Attorney General, Phoenix
*Counsel for Appellee*

Law Offices of Thomas Jacobs, Tucson
By Thomas Jacobs
*Counsel for Appellant*

**OPINION**

Judge Sklar authored the opinion of the Court, in which Vice Chief Judge Staring and Judge O'Neil concurred.

S K L A R, Judge:

**¶1**        As interpreted by the United States Supreme Court, the Eighth Amendment's prohibition on cruel and unusual punishment applies to sentences that are "grossly disproportionate" to the crimes. This case requires us to apply that standard to sexual offenses that Evan Jerald committed against two young children when he was fifteen and sixteen years old. He was not charged until after he turned eighteen, so he was tried and convicted in adult criminal court. He was then sentenced under the dangerous-crimes-against-children (DCAC) statute to cumulative prison terms totaling more than 200 years for eight convictions.

**¶2**        We conclude that Jerald's individual sentences are not grossly disproportionate to his crimes. In doing so, we first reject Jerald's argument that he was improperly sentenced under the DCAC statute because he committed the crimes as a juvenile. He was properly sentenced under provisions of that statute applicable to defendants who were "tried as an adult." We also conclude that under *State v. Berger*, 212 Ariz. 473 (2006), we may not consider whether the cumulative sentences are grossly disproportionate. We must instead consider each of the eight DCAC sentences individually. And although the individual sentences are long, they do not meet the gross-disproportionality standard given the severity of the offenses.

**¶3**        As more fully explained below, we also reject Jerald's other statutory and constitutional arguments—including equal-protection and due-process claims of first impression—as well as his claims of trial error. We therefore affirm the convictions and sentences.

## FACTUAL AND PROCEDURAL BACKGROUND

**¶4**        We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all reasonable inferences against Jerald. *See State v. Fierro*, 254 Ariz. 35, ¶ 2 (2022). Several times between New Year's Eve 2014 and November 2015, R.S. asked Jerald to babysit her children, E.S. and G.S. E.S. was eight and nine years old and G.S., who is autistic, was six and

seven years old. During this period, Jerald began forcing E.S. to have vaginal and oral sex with him. Jerald also attempted to have anal sex with E.S. on one occasion and forced G.S. to have oral sex with him. Jerald was between 15 and 16 years old at the time.

¶5 In November 2015, R.S. discovered that E.S. was talking to Jerald at night without her permission using Skype. Jerald was also communicating with E.S. using Wickr, a secure texting application. R.S. cut off all contact with Jerald and called the police. E.S. was interviewed at the Children's Advocacy Center, but she did not make any allegations against Jerald, and the investigation was closed.

¶6 In 2017, E.S. was taken to the Children's Advocacy Center for a second interview, where she disclosed Jerald's conduct. G.S. was also interviewed and disclosed that Jerald had engaged in oral sex with him.

¶7 Jerald was indicted in January 2018, ten months after his eighteenth birthday, on eight counts of sexual conduct with a minor under fifteen and two counts of molestation of a child. The jury was unable to reach a unanimous verdict on any count, which resulted in a mistrial. After a second trial in September 2021, Jerald was found guilty of four counts of sexual conduct with a minor and four lesser-included counts of molestation of a child. He was found not guilty on two counts of molestation of a child. He filed a motion for a new trial, which was denied.

¶8 Jerald was sentenced under A.R.S. § 13-705, the DCAC statute. For each of the four sexual-conduct-with-a-minor convictions, Jerald received a life sentence with no possibility of release for thirty-five years. Those sentences run consecutively. He was also sentenced to four consecutive seventeen-year prison terms for the molestation-of-a-child convictions. Those sentences also run consecutive to the life sentences, meaning that the minimum possible prison term is 208 years. Jerald appeals his convictions and sentences.

## APPLICABILITY OF A.R.S. § 13-705

¶9 Before evaluating the constitutionality of Jerald's sentences, we must first determine whether the trial court properly sentenced him under the DCAC statute. That statute requires enhanced sentences for certain crimes committed against children, including sexual conduct with a minor and child molestation. *See* A.R.S. § 13-705(A), (B), (D). We review the interpretation and application of a sentencing statute de novo. *State v. Lambright*, 243 Ariz. 244, ¶ 9 (App. 2017).

## I. Background on A.R.S. § 13-705

**¶10** Under the version of Section 13-705 applicable when the offenses occurred, subsections (A) and (B) govern sentencing for sexual conduct with a minor under twelve years old. 2014 Ariz. Sess. Laws, ch. 224, § 2. Subsection (D) governs sentencing for child molestation. *Id.* Those subsections have since been re-numbered, but their substance has not changed. We cite the subsections as they were numbered when Jerald committed the offenses, which are the versions applicable here.

**¶11** Subsection (A) applies only to "a person who is at least eighteen years of age." It requires that the defendant "be sentenced to life imprisonment" with no possibility of release for thirty-five years. Subsection (B), which applies to a broader set of crimes than subsection (A), applies to "a person who is at least eighteen years of age *or who has been tried as an adult*." (emphasis added). Subsection (B) provides for a minimum prison term of thirteen years, a presumptive term of twenty years, and a maximum term of twenty-seven years. Subsection (B) also states that a defendant "may be sentenced to life imprisonment" with no possibility of release for thirty-five years. At sentencing, the trial court did not say whether it was imposing the life sentences under subsection (A) or (B).

**¶12** Subsection (D) imposes a presumptive 17-year sentence for child molestation when the defendant was "eighteen years of age" or "tried as an adult." It also provides for a minimum sentence of ten years and a maximum sentence of twenty-four years. Jerald's 17-year sentences were imposed as presumptive sentences under subsection (D).

## II. Whether A.R.S. § 13-705 applies to Jerald's offenses

**¶13** Jerald argues that Section 13-705 does not apply. He argues that for purposes of the statute, he was neither "eighteen years of age" nor "tried as an adult." He therefore argues that the proper sentencing scheme was that applicable to first-time felony offenders, as set forth in A.R.S. § 13-702. Under that statute, the presumptive sentence for each offense was five years. A.R.S. § 13-702(D).

**¶14** In his opening brief, Jerald argues that he was not "at least eighteen years of age." The state agrees, though Jerald's reply brief argues a different position. Regardless, we agree with Jerald's initial position and the state that "at least eighteen years of age" refers to the defendant's age when the crime was committed. *See State v. Cromwell*, 211 Ariz. 181, ¶ 49 (2005) (concluding that defendant's sentence was properly enhanced "on

express findings by the jury that the victim was a child under twelve years of age and that [the defendant] was at least eighteen years of age *at the time of the crime*." (emphasis added)). Here, Jerald committed the crimes when he was fifteen and sixteen years old. It follows that he was not subject to a mandatory life sentence under subsection (A).

¶15 We focus, therefore, on whether Jerald was "tried as an adult" under subsection (B). He asks us to construe "tried as an adult" as applying only to juveniles whose cases are filed in adult criminal court under A.R.S. § 13-501. That statute addresses the extent to which the state may prosecute "a juvenile in the same manner as an adult." § 13-501(A), (B). For certain crimes, including those at issue here, juveniles charged in adult criminal court may petition for transfer to the juvenile court. §§ 13-501(B) (listing crimes subject to possible transfer), 13-504(A) (providing for right to transfer hearing). However, Section 13-501 does not address prosecution of defendants who are eighteen years or older and are being charged for crimes committed before they turned eighteen. Those defendants cannot be charged in juvenile court and are required to be tried in adult criminal court. *See* § 13-501(G) (juvenile court lacks jurisdiction over defendants eighteen years of age or older). The state proposes, by contrast, that "tried as an adult" applies to all defendants accused of committing crimes while juveniles and who face prosecution in adult criminal court, regardless of whether Section 13-501 applies.

¶16 In construing statutes, we must "determine the meaning of the words the legislature chose to use," consistent with "the plain meaning of the words in their broader statutory context." *S. Az. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, ¶ 31 (2023). Applying this approach, we conclude that the state's proposed construction better conforms to the statutory language. By focusing on how the defendant was "tried," the statutory language looks to the nature and timing of the proceedings. Where the proceedings were those applicable to "adult[s]," the defendant was "tried as an adult," despite having committed the crime while a juvenile. Section 13-705(B) makes no reference to Section 13-501 or its procedures. Adopting Jerald's proposed construction would require adding such a reference to statutory language that lacks it. We will not do so. *See Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) (providing that "court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions") (quoting *City of Phx. v. Donofrio*, 99 Ariz. 130, 133 (1965)).

¶17 The broader statutory context reinforces the state's proposed construction. That structure creates two classes of defendants for sexual conduct with a minor under twelve: (1) those who were "at least eighteen years of age" at the time of the crime and (2) those "tried as an adult." Under subsection (A), only the former class is subject to mandatory life sentences. *See also* A.R.S. § 13-705(A) (2022) (adding classification of crimes subject to natural-life sentence for defendants who are "at least eighteen years of age"). Subsection (B) allows courts to sentence defendants in the latter class to a discretionary life sentence or a sentence within the statutory range. Thus, adopting the state's construction would lead to the logical result that defendants who offended as juveniles may be treated more leniently than those who offended as adults, despite having committed the same crime. For that same reason, we also reject Jerald's argument that the state's proposed construction would render the phrase "at least eighteen years of age" superfluous by subsuming it within the category of defendants "tried as an adult."

¶18 The state also correctly notes that Jerald's interpretation would "create a blind spot in the statute." It would limit subsection (B)'s discretionary life sentence to offenders who were prosecuted under Section 13-501, which applies only to defendants who are still juveniles. But juvenile offenders who were not prosecuted until after turning eighteen would receive comparatively lenient sentences under the first-time offender statute. The statutory language reveals no basis for this disparate treatment.

## III. Jerald's remaining statutory arguments

¶19 Jerald also appears to argue in the alternative that even if Section 13-705 applies, the trial court erred by imposing a mandatory life sentence under subsection (A). As we have noted, though, the court did not identify the subsection it applied, and the sentence was authorized by subsection (B). We therefore presume that the court correctly applied the law at sentencing. *See State v. Williams*, 220 Ariz. 331, ¶ 9 (App. 2008).

¶20 Finally, Jerald argues that even if the trial court sentenced him under subsection (B), it could not impose a life sentence unless an aggravating factor had been found first. Jerald reasons that because a lower sentencing range was available, the life sentence is equivalent to an aggravated sentence. His argument has intuitive appeal. A.R.S. § 13-701(C) requires the trier of fact to find an aggravating factor before sentencing a defendant to a "maximum term" under Section 13-705. A life sentence is, of course, the longest possible term.

¶21 Nevertheless, the statutory language does not support Jerald's argument. Section 13-705(B) does not define a life sentence as the maximum term. Rather, it uses the term "maximum" only once, in providing for the sentencing range that applies "[i]f a life sentence is not imposed." It defines the "maximum" term as twenty-seven years, so an aggravating factor would be required for such a sentence. But Jerald was sentenced under the portion of subsection (B) that provides for life imprisonment, which the statute does not define as the "maximum." It follows that no aggravating factor was required. Moreover, Section 13-701(H) reinforces that the requirement of aggravating factors does not apply to "any provision of law . . . that expressly provides for imprisonment for life."

¶22 This statutory interplay yields a strange result. It requires an aggravating factor for a 27-year sentence, but not a life sentence. However, even were we to agree with Jerald that this result is unfair, we will not rewrite the statute simply to avoid that outcome. *See City of Phx. v. Butler*, 110 Ariz. 160, 162 (1973) ("[I]t is not the function of the courts to rewrite statutes."). Jerald also does not develop an argument that we should construe the statute differently because the result is purportedly absurd. *See State v. Estrada*, 201 Ariz. 247, ¶ 17 (2001) ("A result is 'absurd' if it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion."). We therefore do not consider that issue. *See Ritchie v. Krasner*, 221 Ariz. 288, ¶ 62 (App. 2009) (providing that failure to develop argument and support it with authority can constitute abandonment and waiver). We instead conclude that Jerald was properly sentenced under Section 13-705(B).

## EIGHTH AMENDMENT

¶23 Having concluded that the DCAC statute authorized Jerald's cumulative sentences of 208 years, we next address whether the sentences violated the Eighth Amendment. The Eighth Amendment, which prohibits "cruel and unusual punishments," is applicable to the states through the Fourteenth Amendment. U.S. Const. amend. VIII; *Robinson v. California*, 370 U.S. 660, 667 (1962). We review de novo whether Jerald's sentences comply with the Eighth Amendment. *See State v. Allen*, 253 Ariz. 306, ¶ 207 (2022).

## I. Gross disproportionality

¶24 Jerald first argues that his cumulative sentences were grossly disproportionate to the severity of his crimes. The Eighth Amendment

prohibits punishments that are grossly disproportionate to an offense. *See Graham v. Florida*, 560 U.S. 48, 59 (2010) ("Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'") (alteration in *Graham*) (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910))). However, "strict proportionality between crime and sentence" is not required and only "extreme sentences that are grossly disproportionate to the crime" are forbidden. *Id.* at 60 (internal quotations omitted) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-01 (Kennedy, J., concurring)). An offender's age is relevant to the proportionality inquiry. *Id.* at 77.

¶25 In conducting our Eighth Amendment proportionality inquiry, we "carefully examine the facts of the case and the circumstances of the offender to see whether the sentence is cruel and unusual." *State v. Davis*, 206 Ariz. 377, ¶ 34 (2003). We must first determine whether "there is a threshold showing of gross disproportionality by comparing 'the gravity of the offense [and] the harshness of the penalty.'" *State v. Berger*, 212 Ariz. 473, ¶ 12 (2006) (quoting *Ewing v. California*, 538 U.S. 11, 28 (2003)). "If this comparison leads to an inference of gross disproportionality, the court then tests that inference by considering the sentences the state imposes on other crimes and the sentences other states impose for the same crime." *Id.* ¶ 12.

## A. Cumulative or individual sentences

¶26 The first step in our gross-disproportionality inquiry is determining whether we may consider Jerald's cumulative sentences together, or whether we must consider each sentence individually. We generally "will not consider the imposition of consecutive sentences in a proportionality inquiry." *Id.* ¶ 27; *see also State v. Soto-Fong*, 250 Ariz. 1, ¶ 30 (2020) ("[G]enerally, courts do not permit defendants to 'stack' their crimes to generate an Eighth Amendment claim."). We instead review each individual sentence. *Id.* However, in *Davis*, the Arizona Supreme Court allowed for the consideration of cumulative sentences that are "mandatorily lengthy, flat, and consecutive." 206 Ariz. 377, ¶ 47. *Berger* limited *Davis* by requiring us to view sentences individually when the conduct was "at the core, not the periphery" of a criminal statute's prohibition and the defendant could not "be characterized as someone merely 'caught up' in a statute's broad sweep." *Berger*, 212 Ariz. 473, ¶ 44.

¶27 Applying this framework, this court has considered lengthy consecutive sentences in two recent cases involving sexual crimes committed by juveniles. First was *State v. Kleinman*, 250 Ariz. 362 (App.

2020). There, the 20-year-old defendant had been twelve or thirteen years old when he committed the offenses, which involved his five- and six-year-old sister. *Id.* ¶¶ 2-3. The defendant's father had been in prison for sexual misconduct with another of the defendant's sisters, and the defendant said he "was just trying what dad did." *Id.* ¶ 4. He was sentenced to three mandatory, consecutive terms of thirteen years. *Id.* ¶ 7. On appeal, the state conceded that the sentences were grossly disproportionate. *Id.* ¶ 15. This court accepted that concession, in light of the case's unusual circumstances. *Id.* ¶¶ 15-16.

¶28　　　Next was *State v. Agundez-Martinez*, 254 Ariz. 452 (App. 2023), which our supreme court partially vacated on other grounds. *See State v. Agundez-Martinez*, 256 Ariz. 391, ¶ 34 (2024). That case involved an adult defendant who received cumulative sentences of fifty-one years for offenses he committed when he was between ten and twelve years old. 254 Ariz. 452, ¶¶ 1-3. This court again considered the sentences cumulatively because they were mandatorily lengthy, flat, and consecutive. *Id.* ¶¶ 60-66. The court also concluded that given the nature of the offenses and the defendant's extremely young age, the consecutive sentences were "so severe as to shock the conscience of society." *Id.* ¶ 64 (quoting *Davis*, 206 Ariz. 377, ¶ 49).

¶29　　　Like *Kleinman* and *Agundez-Martinez*, this case meets at least some of *Davis*'s requirements. Jerald's mandatory sentences were lengthy, flat, and consecutive. Even if the trial court had imposed the minimum sentence for each conviction, Jerald faced ninety-two years in prison. *See* §§ 13-705(B) (minimum sentence of thirteen years for sexual conduct with a minor under twelve), 13-705(D) (minimum sentence of ten years for child molestation), 13-705(M) (requiring consecutive sentences). That would exceed his life expectancy.

¶30　　　But as *Berger* explains, we cannot consider the consecutive sentences where the offender's conduct was at the core, rather than the periphery, of the proscribed conduct. And here, Jerald's conduct was at the core. He repeatedly engaged in sexual conduct with children between six and nine years old, significantly younger than he was at the time. He tore E.S.'s vagina while penetrating it with his penis. And when E.S. told Jerald that the sex was painful, he penetrated her vagina with a Sharpie. During another incident, Jerald attempted to penetrate E.S.'s anus with his penis. He also performed oral sex on G.S., who is autistic. These were violative, cruel acts. The statutes criminalizing sexual conduct with a minor and molestation of a child are targeted at this conduct. *See* A.R.S. §§ 13-1405,

13-1410; *see also State v. Florez*, 241 Ariz. 121, ¶ 25 (App. 2016) (concluding that "statutes addressing molestation and sexual conduct with a minor advance the state's goal of combating the sexual abuse," thus rejecting gross-disproportionality argument from adult defendant).

**¶31**        Even so, Jerald points to his age at the time of the offenses. The defendants' ages were important factors in *Kleinman* and *Agundez-Martinez*. We understand those cases as having concluded that the offenders' young ages placed their conduct at the criminal statutes' periphery. This understanding is consistent with *Berger*, which described *Davis* as "at the edge of the statute's broad sweep of criminal liability," given the defendant's age and maturity level, as well as the willing participation of the victims. *Berger*, 212 Ariz. 473, ¶ 41.

**¶32**        Here, by contrast, Jerald's age does not bring his conduct outside the statutes' core. Unlike the defendants in *Kleinman* and *Agundez Martinez*, who were younger than fourteen at the time of their offenses, Jerald was fifteen and sixteen years old. That distinction has legal significance. Section 13-501 allowed Jerald to be tried as an adult even had he been arrested immediately. *See* A.R.S. § 13-501(B). The same was not true of the *Kleinman* and *Agundez-Martinez* defendants. That Jerald could be tried as an adult, albeit subjected to a more lenient sentencing scheme under Section 13-705(B), suggests that the statutory scheme is targeted at offenders like him. Unlike in *Davis*, he was not simply "caught up" in its broad sweep. Also unlike *Davis*, Jerald's very young victims had no ability—legal or otherwise—to consent or willingly participate in the conduct. Thus, despite Jerald's age, we conclude that his conduct was at the core of the conduct proscribed by statute. We therefore do not consider the consecutive sentences in our gross-disproportionality review. We instead analyze the sentences individually.

### B. Gross disproportionality inquiry as applied to the individual sentences

**¶33**        For the convictions of sexual conduct with a minor under twelve years old, Jerald's sentences of life with no possibility of release for thirty-five years are severe. But the offenses were egregious, especially given the victims' ages relative to his own. *See State v. Kasic*, 228 Ariz. 228, ¶ 25 (App. 2011) (rejecting Eighth Amendment challenge to cumulative sentence exceeding 17-year-old's life expectancy where defendant "intentionally set fire to numerous homes late at night or during the early morning hours while the residents were inside sleeping"). Jerald also behaved with deviousness and deception. He concealed his conduct from

R.S., the victims' mother, by secretly communicating with E.S. He also encouraged E.S. to sneak out of the house at night to meet him in an alleyway, and he committed the offenses when no one else was present.

¶34 Both the U.S. and Arizona Supreme Courts have rejected Eighth Amendment challenges to similar sentences for repeat offenders who committed crimes that were qualitatively less severe. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 28-31 (2003) (affirming life sentence for recidivist offender convicted of stealing three golf clubs valued at $1,200); *State v. Jonas*, 164 Ariz. 242, 248 (1990) (affirming 25-year sentence for recidivist offender convicted of selling one marijuana cigarette to a 14-year-old for one dollar).

¶35 In seeking a different outcome from those cases, Jerald points primarily to his age at the time of the offenses. At oral argument, he further argued that any DCAC sentence imposed on a defendant who offended as a juvenile should give rise to an inference of gross disproportionality. We see no basis for reaching such a far-reaching conclusion. Among other things, such an approach would negate the provisions of Section 13-501 that allow—and in certain cases require—juvenile offenders to be prosecuted as adults.

¶36 Moreover, Jerald's age alone does not give rise to an inference of gross disproportionality. Jerald was older than the defendants in *Kleinman* and *Agundez-Martinez*, and the age difference was greater. He also acted more deceptively than those defendants. The opinion in *Kleinman* makes no reference to deceit or concealment. *Kleinman*, 250 Ariz. 362, ¶ 2. And in *Agundez-Martinez*, the only such conduct involved locking a door on one occasion. *Agundez-Martinez*, 254 Ariz. 452, ¶ 4. Jerald's secret communications with E.S. and his efforts to lure her outside highlight a comparatively devious manipulation of his victims. That behavior also suggests that he was conscious of his actions' wrongfulness. These distinctions with *Kleinman* and *Agundez-Martinez* reinforce that punishing Jerald as an adult is not grossly disproportionate to his greater culpability.

¶37 In addition, Jerald points to evidence he presented in mitigation that he had been physically and sexually abused as a child. He also suffered from mental-health problems that were significant enough for him to be declared incompetent to stand trial for eighteen months. And as he emphasized at oral argument, a psychosexual evaluation concluded that he was not at the highest risk of reoffending. We assume without deciding that we may consider this type of mitigation in the gross-disproportionality inquiry. However, we may do so only to the extent that the evidence

11

"go[es] to the defendant's degree of culpability for the offense." *Berger*, 212 Ariz. 473, ¶¶ 47-48 (rejecting argument that defendants are generally entitled to present "mitigation evidence" on disproportionality).

**¶38** We do not conclude that this evidence gives rise to an inference of gross disproportionality. As an initial matter, we must "accord substantial deference to the legislature and its policy judgments as reflected in statutorily mandated sentences." *Berger*, 212 Ariz. 473, ¶ 13. And as we have explained, Jerald's life sentences were authorized by a comprehensive statutory scheme that gave the trial court discretion to sentence him more leniently because he committed the crimes as a juvenile.

**¶39** Moreover, the trial court was presented in mitigation with the same evidence that Jerald refers to here. That court was in the best position to weigh that evidence. *See State v. Carbajal*, 177 Ariz. 461, 463 (App. 1994) ('The trial court is in the best position to determine the evidence surrounding the aggravating and mitigating factors and which factors should be given credence."). And it chose to impose life sentences for the sexual-conduct convictions and presumptive sentences for the child-molestation convictions. It was not required to do so, despite Jerald's arguments to the contrary.

**¶40** Indeed, the trial court's ability to consider evidence of Jerald's background in mitigation was broader than ours in evaluating gross disproportionality. Rather than focusing solely on culpability, as *Berger* requires, the court could consider in mitigation any "factor that is relevant to the defendant's character or background or to the nature or circumstances of the crime." A.R.S. § 13-701(E)(6). We therefore conclude that in our gross-disproportionality analysis, we should defer to the court's weighing of the mitigation evidence. *See State v. Harvey*, 193 Ariz. 472, ¶ 24 (1998). We see no basis for second-guessing its conclusion.

**¶41** As for Jerald's 17-year sentences for child molestation, our analysis is similar. Those crimes were also egregious, though the shorter terms reflect the legislature's policy judgment that they were less serious than Jerald's other crimes. As with those crimes, his age and other mitigation do not justify concluding that the sentence was grossly disproportionate. We therefore conclude that Jerald's sentences do not give rise to an inference of gross disproportionality. We need not undertake the next step of the Eighth Amendment analysis—an inter-jurisdictional and intra-jurisdictional review. *See id.* ¶¶ 24-36.

## II.     Constitutionality of de facto life sentence for juvenile offenders

**¶42**          Jerald also argues that a de facto life sentence for juveniles necessarily violates the Eighth Amendment.  However, our supreme court rejected this argument in *State v. Soto-Fong*, 250 Ariz. 1, ¶ 31 (2020).  We are "bound by decisions of the Arizona Supreme Court and [have] no authority to overturn or refuse to follow its decisions." *State v. McPherson*, 228 Ariz. 557, ¶ 13 (App. 2012).

**¶43**          We must also reject Jerald's argument that *Soto-Fong* "completely ignored the U.S. Supreme Court's basic moral reasoning" arising from a line of cases beginning with *Roper v. Simmons*, 543 U.S. 551, 568 (2005).   *Roper* held that the Eighth Amendment prohibits death sentences for juvenile offenders.  While we are "bound to follow applicable holdings of United States Supreme Court decisions," we are not so bound by "mere dicta or other statements that allegedly bear on issues neither presented nor decided in such decisions." *Soto-Fong*, 250 Ariz. 1, ¶ 32.

**¶44**          We similarly reject Jerald's argument that *Graham v. Florida*, 560 U.S. 48 (2010), another in the *Roper* line of cases, renders *Berger* ineffectual as to juveniles.  *Graham* prohibits life-without-parole sentences for juvenile offenders who did not commit homicide.  560 U.S. at 82.  But here, Jerald was not sentenced to life without the possibility of parole or release.  He instead received "aggregated sentences for multiple crimes," which our supreme court in *Soto-Fong* concluded was unaffected by *Graham*. *Soto-Fong*, 250 Ariz. 1, ¶ 27.

**¶45**          Finally, we reject Jerald's argument that *Soto-Fong* "squarely contradicts" the Ninth Circuit case of *Moore v. Biter*, 725 F.3d 1184 (9th Cir. 2013).  We are not bound by the decisions of the Ninth Circuit. *Skydive Ariz., Inc. v. Hogue*, 238 Ariz. 357, ¶ 29 (App. 2015).  But we are bound by *Soto-Fong*.

### EQUAL PROTECTION

**¶46**          Jerald also argues that his prosecution and sentences violated his right to equal protection under the United States Constitution.  Specifically, he argues that the application of Section 13-705 violates the Equal Protection Clause of the Fourteenth Amendment because (1) it "mandate[d] that [he would] be subject to enhanced sentencing guidelines for adults despite the fact that he offended as a juvenile," and (2) did not allow him to receive "consideration for juvenile adjudication and treatment that others who committed the same offense at the same age would be

entitled to." Neither party has identified any Arizona case addressing this issue, making it one of first impression. We review equal-protection challenges de novo. *State v. Arevalo*, 249 Ariz. 370, ¶ 9 (2020).

**¶47** The Equal Protection Clause prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is designed to secure equal treatment and application of the law for those who are similarly situated. *Martin v. Reinstein*, 195 Ariz. 293, ¶ 49 (App. 1999). Generally, when the law draws a distinction or classification among similarly situated individuals, we review that classification for a rational basis to determine whether it is "predicated on some reasonable basis which will promote a legitimate purpose of legislation." *Id.* ¶ 50 (quoting *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 441 (1982)). However, if the classification limits the exercise of a fundamental right or affects a suspect class, we apply strict scrutiny and uphold the classification only if it is necessary to further a compelling state interest. *See State v. Nguyen*, 185 Ariz. 151, 153 (App. 1996); *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

**¶48** Jerald argues that he is entitled to equal-protection review because he is in a "particular class of juveniles" who committed offenses as juveniles but were not charged until after turning eighteen. He was treated differently from those offenders, he argues, because, unlike them, he was ineligible for adjudication in juvenile court or for treatment available to juvenile offenders. *See* A.R.S. §§ 8-202(G), (H) (providing that juvenile-court jurisdiction is retained "until the child becomes eighteen years of age," unless terminated earlier, though court may retain jurisdiction until juvenile's nineteenth birthday under limited circumstances); 41-2820(A) (requiring juvenile to be discharged from jurisdiction of Department of Juvenile Corrections upon "attaining eighteen years of age," unless juvenile court retained jurisdiction until nineteenth birthday). We assume without deciding that this classification implicates the Equal Protection Clause. We must therefore determine which level of scrutiny to apply.

**¶49** In arguing for strict scrutiny, Jerald does not purport to be a member of a suspect class. He instead argues that strict scrutiny applies because Sections 13-501, 13-504, and 13-705 limit the exercise of his fundamental rights to life and liberty. He points to the fact that he will die in prison while serving his 208-year sentences. However, the U.S. Supreme Court concluded in *Chapman v. U.S.*, 500 U.S. 453, 465 (1991), that criminal-sentencing statutes do not generally limit the exercise of

fundamental rights. *Chapman* explained, "Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves guilt beyond a reasonable doubt at a criminal trial." *Chapman*, 500 U.S. at 465. It added that once "a person . . . has been so convicted . . . the court may impose, whatever punishment is authorized by statute" provided that the punishment is not cruel and unusual or based on an arbitrary distinction that would violate due process. *Id*. at 465; *see also Nguyen*, 185 Ariz. at 153 (concluding that defendant's prison sentence did not implicate fundamental right). We therefore reject Jerald's argument concerning his fundamental rights to life and liberty.

¶50            Jerald also argues that he has a fundamental right under the Equal Protection Clause to have his juvenile status at the time of his offenses considered at trial. He primarily relies on the *Graham* line of cases. However, as we have explained, those cases involve the Eighth Amendment. They do not implicate equal protection. Regardless, here the trial court was not precluded from considering that Jerald committed the offenses as a juvenile. As we have explained, Jerald was subjected to a discretionary life sentence, not a mandatory one, because he committed his crimes as a juvenile. The court also had the discretion to consider Jerald's age as mitigation. A.R.S. § 13-701(E)(1).

¶51            Having concluded that strict scrutiny does not apply, we review Jerald's equal-protection argument for a rational basis. Jerald argues that as applied here, the statutory scheme lacks a rational basis because it requires a lengthy sentence with no potential to transfer the case to juvenile court, simply because he was not prosecuted until he became an adult. In conducting our rational-basis review, we consider if the statutes are rationally related to a legitimate government purpose. *See State v. Coleman*, 241 Ariz. 190, ¶ 9 (2016).

¶52            As to whether the state has a rational basis in precluding defendants like Jerald from seeking transfer to juvenile court under Sections 13-501 and 13-504, states generally do not violate equal protection by treating juveniles differently from adults in criminal cases. *In re Miguel R.*, 204 Ariz. 328, ¶ 34 (App. 2003). Unlike sentences in criminal prosecutions, dispositions in delinquency proceedings are designed primarily to rehabilitate. *Id.* ¶ 36; *see also* A.R.S. §§ 13-101 (including as purposes of criminal code "[t]o insure public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized" and "[t]o impose just and deserved punishment on those whose conduct threatens the public peace"); 41-2815(A) (requiring Department of Juvenile

Corrections to develop "individual treatment plan" for every "committed youth" under its jurisdiction). They ensure individualized justice given the state's role in protecting the juvenile's best interest through its role as *parens patriae*. *In re Miguel R.*, 204 Ariz. 328, ¶ 35; *see also McBeth v. Rose*, 111 Ariz. 399, 402 (1975) (providing that juvenile-justice provisions of Arizona law are primarily designed to provide treatment for minors).

¶53 Not all of those purposes can be served once a defendant turns eighteen and ceases to be under the juvenile court's jurisdiction. For example, when considering a transfer to juvenile court under A.R.S. § 13-504, a court must determine "whether public safety and the juvenile's rehabilitation, if adjudicated delinquent, would be served by the transfer," taking into account "[t]he likelihood of the juvenile's reasonable rehabilitation through the use of services and facilities that are currently available to the juvenile court." Neither the services nor the facilities available to the juvenile court for rehabilitation are available to an adult defendant. *See* § 13-501(G).

¶54 As to whether applying Section 13-705 to Jerald has a rational basis, that statute furthers the legitimate purposes of protecting children from sexual predators and punishing those who commit sex crimes against children. A criminal act is the same regardless of the age of the offender. *State v. Melvern*, 192 Ariz. 154, ¶ 5 (App. 1998). Although the punishments imposed under Section 13-705 are severe, they reflect a rational legislative judgment that is entitled to substantial deference. *See Berger*, 212 Ariz. 473, ¶ 14. The potential harm to society does not "depend on the potential punishment for the underlying crime, but on the defendant's acts, which are the same whether the underlying crime is punishable as a juvenile's delinquent act or a felony." *Melvern*, 192 Ariz. 154, ¶ 5. The legislature therefore has a rational basis for differentiating the sentences imposed on offenders based upon "the offender's status at the time the proceedings are initiated and not on the nature of the act." *Agundez-Martinez*, 256 Ariz. 391, ¶ 28.

¶55 Moreover, allowing defendants who committed serious crimes as juveniles to be prosecuted as adults fulfills the voters' stated purposes in adopting the 1996 Juvenile Justice Initiative. *See id.* ¶¶ 1, 17. Among those purposes was "to ensure fairness and accountability when juveniles engage in unlawful conduct." Ariz. Const. art. IV pt. 2 § 22; *see also State v. Davolt*, 207 Ariz. 191, ¶ 100 (2004) ("The stated intent of [the Juvenile Justice Initiative] was to make possible more effective and more severe responses to juvenile crime."). That is a legitimate purpose, as

expressed by the voters. Treating sexual offenses such as Jerald's under Section 13-705 fulfills that purpose. *See Agundez-Martinez*, 256 Ariz. 391 ¶¶ 3, 33 (affirming adult prosecution of offender who, while a juvenile, committed sexual conduct with a minor and child molestation). We therefore reject Jerald's equal-protection argument.

## DUE PROCESS

**¶56** Jerald also argues that his prosecution and sentence violated the Fourteenth Amendment's Due Process Clause. He claims that his treatment was "fundamentally unfair" because he was tried and sentenced as an adult without any consideration of his juvenile status at the time of his offenses. His lengthy cumulative sentences, he asserts, are "draconian" and "shock the conscience." He contends that he was entitled to a "substantive right to the same reduced punishment that others who offended as minors would receive." We review this issue de novo. *Arevalo*, 249 Ariz. 370, ¶ 9.

**¶57** Contrary to Jerald's argument, though, the criminal consequences of a defendant's actions do not violate due process simply because they are "'fundamentally unfair' in any way." To the extent our case law looks to a trial's fundamental fairness, it does so in the context of procedural matters, not the fact of the prosecution or the sentence. *See, e.g.*, *State v. Bush*, 244 Ariz. 575, ¶ 11 (2018) (addressing whether pretrial publicity was "so pervasive that it caused the proceedings to be fundamentally unfair"); *State v. Guarino*, 238 Ariz. 437 ¶ 15 (2015) (stating that victim-impact and related evidence can be excluded at penalty phase where that evidence "is so unduly prejudicial that it renders the trial fundamentally unfair"). As this court has explained, "Due process requires a meaningful opportunity to be heard only when a person may be deprived of life, liberty, or property." *Andrews v. Willrich*, 200 Ariz. 533, ¶ 23 (App. 2001). It is not implicated by the statutory scheme providing for juveniles to be prosecuted as adults in some cases. *Id.* This is especially true as juveniles possess no constitutional right to an adjudication in juvenile court. *Id.* (citing Ariz. Const. art. IV, pt. 2, § 22).

**¶58** At least one other court has rejected the argument that a life sentence imposed upon a juvenile "violates basic due process principles of fundamental fairness." *State v. Warren*, 887 N.E.2d 1145, 1150-52 (Ohio 2008). That case involved a defendant who had committed repeated forcible rape when he was fifteen years old, but who was not prosecuted until after reaching adulthood. *Id.* at 1145. In concluding that the mandatory life sentence did not violate due process, the Ohio Supreme

Court reasoned that when the defendant committed the crimes, the statutory scheme placed him on notice "that the offense[s] he allegedly committed could subject him to criminal prosecution as an adult." *Id.* at 1154. In part for the same reason, the court rejected the argument that the defendant was arbitrarily subject to an increased sentence simply due to the victim's delay in reporting his crimes or the state's delay in prosecuting him. *Id.* at 1154-55.

**¶59** We find *Warren*'s analysis persuasive. Similar to that case, the "tried as an adult" language in Section 13-705(B) placed Jerald on notice that he could be subject to sentencing under the DCAC statute. Moreover, Jerald has presented no argument—nor does the record suggest—that the state intentionally delayed his prosecution to deprive him of the ability to move for transfer to the juvenile court. The state acknowledged at oral argument that such a delay would have violated due process. But with no such delay here, we reject Jerald's due-process argument.

## TRIAL ISSUES

**¶60** Aside from the sentencing issues, Jerald asserts that the trial court committed two other errors: (1) refusing to admit data from the Facebook Messenger application that showed his location; and (2) denying his motion for a mistrial based on unprompted testimony from G.S. about uncharged conduct by Jerald.

### I. Facebook location data

**¶61** We first address Jerald's argument concerning the Facebook location data. Jerald identified the Facebook location data twelve days before trial, when he filed a notice of disclosure stating that he intended to use "Google and Facebook GPS Information." The trial court precluded this material on grounds of untimeliness and unfair prejudice. Jerald challenges this decision, as well as the denial of his motion for a new trial on the same grounds.

**¶62** We review a court's decision to exclude evidence for an abuse of discretion. *State v. Smith*, 250 Ariz. 69, ¶ 76 (2020). Similarly, we review a court's sanction for an untimely disclosure for an abuse of discretion. *State v. Ramos*, 239 Ariz. 501, ¶ 7 (App. 2016).

**¶63** However, we need not address whether the trial court erred, because any potential error was harmless. *See State v. Morris*, 215 Ariz. 324, ¶ 44 (2007) ("An error is harmless if it appears 'beyond a reasonable doubt

that the error . . . did not contribute to the verdict obtained.'" (quoting *State v. Dann*, 205 Ariz. 557, ¶ 18 (2003))). Jerald's argument in support of the location data's relevance rests on E.S.'s testimony that he had once used a "texting app" to lure her to the alleyway where he committed the crimes. Jerald argues that the location data would have shown that he was never in the alleyway during the alleged period.

¶64        However, the Facebook location data would have provided Jerald's location only when he logged in or was using the application. No trial evidence indicated that Jerald had communicated with E.S. using Facebook Messenger. Rather, Jerald had used a different application, Wickr, to communicate with E.S. As a result, the location data's probative value was minimal and would not have affected the jury's verdict. For the same reason, we conclude that the trial court did not err in denying Jerald's motion for a new trial on that basis.

## II.     Motion for mistrial

¶65        The motion for mistrial concerned G.S.'s unprompted testimony that Jerald had forced G.S. to perform oral sex. We review a decision on a motion for mistrial for an abuse of discretion. *State v. Nelson*, 229 Ariz. 180, ¶ 36 (2012).

¶66        The sexual-conduct-with-a-minor charges related to Jerald performing oral sex on G.S. Before Jerald's first trial, which ended in a mistrial, Jerald moved to preclude testimony that G.S. had performed oral sex on him. The trial court granted the motion. At the retrial, the state said it intended to avoid questioning G.S. about the issue.

¶67        During the prosecutor's direct examination of G.S. at Jerald's second trial, the following exchange took place:

> Q. Okay. When you were in the bedroom, did you have clothes on?
>
> A. Yes, I did.
>
> Q. And did he have clothes on?
>
> A. Yes.
>
> Q. What happened when – what happened to your clothes when he sucked on your penis or your dick?

A. Well, nothing much. He just told me to take off my underwear and my pants, and that's where he started sucking my dick. *And he made me suck his, too*. (Emphasis added).

Jerald objected and moved for a mistrial. The state responded that it had been very careful to ask G.S. direct and leading questions to avoid that allegation but that G.S. had "just blurted that part out." The trial court found that the remark did not require a mistrial. Jerald declined a curative instruction offered by the court out of concern that it would draw attention to the remark. The state did not further question G.S. about the issue or raise it in closing.

¶68          "When unsolicited prejudicial testimony has been admitted, the trial court must decide whether the remarks call attention to information that the jurors would not be justified in considering for their verdict, and whether the jurors in a particular case were influenced by the remarks." *State v. Jones*, 197 Ariz. 290, ¶ 32 (2000). The trial court has broad discretion to grant or deny a mistrial, because it "is in the best position to determine whether the evidence will actually affect the outcome of the trial." *Id.*

¶69          Declaring a mistrial is "the most dramatic remedy" available to the trial court and should only be granted "when it appears that justice will be thwarted unless the jury is discharged." *State v. Dann*, 205 Ariz. 557, ¶ 43 (2003) (quoting *State v. Adamson*, 136 Ariz. 250, 262 (1983)). In this case, the prejudicial remark was brief, unsolicited, and never mentioned again. Given the record before us, we cannot conclude that the trial court abused its discretion in denying Jerald's motion for a mistrial, especially given that Jerald declined the more modest remedy of a curative instruction.

**DISPOSITION**

¶70          We affirm Jerald's convictions and sentences.